Draper to use of Clifton vs. Owsley.

15 613
36a 141

DRAPER to use of CLIFTON vs. OWSLEY.

1. If a defendant compromises a suit, and executes a new note for a less sum than demanded in the suit, with a full knowledge of all the facts, he is bound by the compromise, and, though sued on the new note in a justice's court, cannot go behind it, and rely upon a defense which he might have used in the original suit.

STATEMENT OF THE CASE.

On the 9th of September, 1836, James P. Shropshire and William P. Owsley gave their note or bond, under seal, to Joseph Conway, for the sum of eight hundred and eighty-five dollars, payable with eight per cent. interest from date, on the first day of August, 1838. This note was given for the sole benefit of Shropshire, and Owsley signed the same as surety, which was well known to Conway at the time. Before this note fell due (perhaps in 1836,) Shropshire was a member of the "Hannibal Company," a partnership or association dealing in lands, and composed of T. G. Draper, William B. Clifton (the plaintiff below in this suit,) the said James P. Shropshire and others. The Hannibal Company having sold a lot to Joseph Conway, the payee of the note above named, he, Conway, in payment for said lot assigned said note to the Hannibal Company on the 18th day of April, 1837. At this time Shropshire, the principal in the note, was a member of the company and was good and solvent, and so continued till 1839 or 40. The company kept said note till their dissolution in 1839. In 1838 or 39, Shropshire sold his share or interest in the effects of the Hannibal Company for about 6000 dollars to Joshua Mitchell, A. S. Robards and Angus W. McDonald; and they (Mitchell, Robards & McDonald) afterwards represented Shropshire's share in the concern and received his part of the assets, when they were distributed, amounting to some $6000. When this company dissolved in 1839, its assets were distributed among the individual members, and the note above named was assigned to Clifton (the real plaintiff below,) by Draper, the secretary of the company, the assignment being made to Clifton without recourse and by the direction of the company. By this time Owsley and Shropshire had become unfriendly, and they continue so still. In 1847, after Shropshire had become insolvent

and taken the benefit of the bankrupt law, suit was commenced by Clifton, or by Draper for his use, against Shropshire and Owsley, on the above named note of 885 dollars, given to Conway in September, 1836. This suit was defended by Owsley, but he compromised or settled the matter by giving various new notes in lieu of the old one on which he had been sued. Time was given him by Draper, and the sum of the new notes was much less than the amount of the first note with the interest. The consideration of the new notes was, 1st., the dismissal of the suit on the old note, as to Owsley; 2d., a reduction of the amount claimed against Owsley, and 3d., the giving of time to Owsley for the payment of said amount. In 1837, the first note had been credited by some $250. The note now sued on is one of the notes given by Owsley in consideration of the dismissal of the suit against him, as surety of Shropshire on the note first above named, and of his discharge from any supposed liability thereon. This suit is to settle the question as to Owsley's liability on any or all of the notes given by him in lieu of the said first named note as above stated.

The court instructed the jury, in effect, that under the circumstances above named, Owsley was liable in law to the payment of the note sued on herein; and refused instructions of a contrary character. Owsley excepted, and brings the case here for reversal.

### Richmond, Harrison and Hawkins, for appellant.

I. This suit having been commenced before a justice of the peace, the defendant may rely upon any defense legal or equitable: Rev. Stats. 1845 pages 652-3.

II. A joint obligation in a bond or ordinary note, with the addition of a seal, may prove by parol or otherwise that he signed the note as surety: Harrison, Ex'r vs. Fields' Ex'r. Washington's Va. Rep. 2 vol. 137-41; Theobald on Prin. and surety 845; Pitman on principal and surety 183–4–5 (Law Lib. vol. 38;) 6 Monroe 104; Ib. 573; 9 Wheaton 720; 11 Wheaton 184.

III. When the original note of 885 dollars came by assignment into the hands of the Hannibal Company, of which Shropshire was a member, Owsley, as Shropshire's surety, was immediately discharged from any liability thereon. Shropshire could not have been sued on this note at law, without being both plaintiff and defendant, which cannot be, and one joint obligor being released, by act of the party, the other is released also. If while this note was in the hands of the company, Shropshire could have been sued by the other members of the company, in chancery only, for a general settlement, Owsley could not have been sued even in chancery, for a surety cannot be sued in chancery when his liability at law has ceased. See case in Washington's Reports, above cited. The assignment of the note to Hannibal Company, and their acceptance of it, in payment for property sold by them, worked a satisfaction, or at least an extinguishment of the liability of even Shropshire, upon the note. How then could Owsly, the surety, be liable thereon? Story on Promissory Notes, section 402 and 425-6; Chitty on Bills p. 60-1 (last edition.)

A debt once released or suspended is always so: Chitty on Bills 411-12. Had Owsly remained bound after this assignment of the note, his liability, as surety, would have been materially raised. He could not have paid the debt to the company and been substituted in their place, so that he could sue Shropshire. Had he called on or notified the company to sue Shropshire on the note, the company could have brought no such suit. The same principle of law which discharges a surety where time has been given to the principal acts with tenfold force in this case: Pitman on principal and surety 166, 180.

'With still more reason was Owsley discharged legally and morally, when Shropshire, a member of the company, knew all the time, while this note was in their hands, that Owsley was his surety thereon. The other members knew it constructively, if not in fact. The company, moreover, had for years the means of payment in their own hands, while Shropshire was solvent, and either did or did not avail themselves of these means. The company, (particularly the plaintiff, by Draper, his agent,) allow Shropshire and his assignees to take

as their own from the assets, some 6000 dollars, and yet in the division, an individual member takes this note as part of his share, and nine years afterwards, when Shropshire is discharged under the bankrupt law, Owsley, the surety, is sued upon the note! If any evidence were wanting, to show that Owsley did not consent to all this, it is found in the proof that he and Shropshire have been unfriendly ever since 1839.

IV. As to the liability of Owsley on the new notes, one of which is sued on here. Is Owsley, under the circumstances, bound by the compromise on settlement with Draper? While compromises are encouraged, and their disruption discountenanced, the courts will yet annul them, where they, by unfairness or through ignorance have been agreed upon. Ignorance of fact, where there is no moral obligation to pay, will discharge a party after a compromise. And sometimes even ignorance of the law takes off the binding force of such agreements. In this case there is no proof to show, that Owsley did know the existence of the facts which would surely have enabled him to defend successfully the suit on the first note. Indeed, all the facts proved, tend to show, that had he known these facts he would have resisted and not compromised that suit. Is not this a case where the plaintiff or his agent, in making this compromise "might well have known the defendant's rights and suppressed his own knowledge of them? Under the circumstances, the taking of this money from Owsley is unconscionable and iniquitous. That the new notes should have been extorted, is sufficient to shock the moral sense and excite our exclamation. Enough is proved to show, that Owsley, had he known his rights or the facts proved on the trial, as well as the plaintiff did, never would have made a compromise. Without the compromise, Owsley owed nothing to the plaintiff, and the plaintiff, by the compromise, gave nothing to Owsley which can be construed into a consideration. See the case of Lawrence vs. Rawlston, 3 Bibb. 102; Story's Equity Jurisprudence sects. 116 to 132 inclusive.

LAKENAN, for respondent.

The note sued upon was given by Owsley in part consideration of the compromise made by the parties under the advice of their attorneys, of a larger note executed by Owsley and one Shropshire, then in suit. The compromise of a doubtful right is a good consideration on which to found a contract, and is highly favored in law. The peace and quiet of society require that such settlements should not be disturbed, unless tainted by fraud. Nor will courts disturb a compromise solemnly made between parties, though ignorant of their right, for the reason, that the settlement is not such as the law would have made, a fortiori where the settlement is made under the advice of their attorneys: 1 Bibb, 168; 2 Bibb. 449; 6 Monroe 97; 2 Paige 478.

Ryland J., delivered the opinion of the court.

From the above statement it will be seen, that the question for the consideration of the court involves the liability of Owsley to pay the notes executed by him to Draper for Clifton, upon the compromise of the suit first brought against Owsley.

Owsley was security to Shropshre in a note for the payment of money to one Conway, upon a contract between Conway and the "Hannibal Company" of which said company Shropshire was a member. This note was assigned to T. G. Draper, Secretary of the "Hannibal Company;" upon the dissolution of the company, Shropshire having previ-

Draper, to use of Clifton vs. Owsley.

ously sold out his interest, the note of Shropshire and Owsley fell to the share of Clifton, and was assigned to him by Draper. Some years after the maturity of this note, suit was commenced upon it by Clifton against Owsley. This suit was compromised by Owsley and Draper, the agent for Clifton; Owsley giving his notes and time, for a less sum than the original debt, to Draper for Clifton, and Draper dismissing the suit. One of the notes given on this compromise, is the foundation of the present action.

The defendant contends, that as this suit was commenced before a justice of the peace, he can avail himself of any defense which either law or equity can afford him, and consequently, as he supposes, he might have made a successful defense against the original suit brought by Clifton against him, that he is still entitled to go behind the compromise and now assert this same defense to these new notes.

The defendant knew all the facts and circumstances of the transaction; and having made a compromise, by which he has the suit against him dismissed, by giving his note for a less sum and obtaining time thereon, he is bound by these notes and cannot go behind the compromise for defense he ought to have made against the original note. He is concluded by his own compromise; it was fairly made with knowledge of all the facts, let him then abide by it.

But take it for granted that he could make this defense, what does it amount to? Will the facts set forth by him exonerate him from the liability as Shropshire's security to Conway? He contends, that as the "Hannibal Company," of which Shropshire was a member, could not sue Shropshire, therefore the security is exonerated. He assumes the fact to be, that the company could not sue on the note. This may be true, as regards a court of law; but it is certain that Draper could not sue as assignee, regarding the words "Secretary of Hannibal Company" as mere *descriptio personae?*

If the defendant, Owsley, really supposed that no suit could have been maintained on the note of himself and Shropshire, he should have put that matter to the test, by giving the notice to sue, allowed by our statute to securities.

It is the opinion of this court, that the facts relied on by the defendant, do not constitute a valid defense to this action.

The judgment of the court below with the concurrence of the other judges is affirmed.