## WILLIAM H. BULKELEY vs. WILLIAM W. HOUSE.

Hartford Dist., Jan. T., 1892. CARPENTER, TORRANCE, FENN, ROBINSON and J. M. HALL, Js.

A note was executed jointly and severally by A, B and C, to a savings bank, for the purpose of procuring a loan for A, the others being sureties for him. The savings bank declined to make the loan unless some person of means, who was not in active business, should sign the note as surety for the persons already upon it, and the defendant, at A's request that he would sign it as surety for them, put his name upon it at some distance below theirs, prefixing to it the word "Surety," intending thereby to sign as surety for the others as principals, and sup-

posing them to be so. *A* failed and the savings bank got a judgment against all the four as joint makers. *B* and *C* paid the judgment and *B* brought a suit against the defendant for a contribution. Held that the defendant was not liable to contribute. (Two judges dissenting.)

In suits for contribution parol evidence is admissible to show the true relations between the several parties bound by a written obligation.

The facts thus shown are not a part of the contract and do not affect its terms, but are wholly collateral to it.

The plaintiff in this case had therefore a right to show his real relation to the note as a surety, although he was an apparent principal, and without reference to the want of knowledge of the facts on the part of the defendant.

But, to recover, the plaintiff would have had to show not only that he was surety for *A*, but that the defendant was co-surety with him for *A*.

And the defendant, to show that the fact was otherwise, had a right to show all the facts attending his own signing of the note, and that he did in fact sign as surety for all the other signers; and this although these facts were not known to the plaintiff.

Upon the facts thus shown the defendant became a surety for the sureties. In this relation, if compelled to pay the note, his claim on the other sureties would not be for a contribution, but for indemnity.

If he signed as surety for the other sureties without their knowledge it might affect his right to indemnity, but his contract would be in all respects a legal one.

The fact that a judgment was recovered against all the signers of the note as joint makers, could not affect their relation to each other or their rights as between themselves.

[Argued January 8th, 1892—decided February 4th, 1893.]

SUIT for contribution; brought to the City Court of the city of Hartford, and tried to the court before *Markham, J.* Facts found and judgment rendered for the defendant, and appeal by the plaintiff. The case is fully stated in the opinion.

*C. E. Perkins,* with whom was *J. L. Barbour,* for the appellant.

1. The court erred in refusing to allow Mr. Bulkeley to testify that, as between himself and Williams, he was only a surety, and in consequence of ruling out this evidence, held that he was a principal. This is almost too clear for argument. Brandt on Sureties, § 226, says:—"It is a general rule that the relation between the several parties bound for the performance of a written obligation may be shown

by parol evidence." And many authorities are there cited:—
*Weston* v. *Chamberlin*, 7 Cush., 404; *Clapp* v. *Rice*, 13 Gray,
403; *Mansfield* v. *Edwards*, 136 Mass., 15; *Fernald* v. *Daw-
ley*, 26 Maine, 470. The court below seems to have consid-
ered that it was necessary that House should have been
proved to have known that Bulkeley was a surety; but that
is clearly not necessary. Brandt on Sureties, § 223, says:—
" As the right to contribution results from equitable princi-
ples, and not from express contract, such right is not at all
affected by the fact that the surety seeking contribution, or
from whom it was sought, had no knowledge that the other
had assumed the obligation of a surety for the same thing."
See also *Monson* v. *Drakeley*, 40 Conn., 552, 560. This evi-
dence was material, because, after excluding evidence that
Bulkeley was a surety for Williams, the court proceeded to
hold him to be a principal, and therefore to have no claim
for contribution.

2. But upon the facts found it is clear that the court erred
in deciding for the defendant. There were four persons
who signed the note as makers—Williams, Rood, Bulkeley
and House. They were all equally liable to the bank, but
the money was obtained by Williams and used entirely by
him. The three others all signed merely for his accommo-
dation, to enable him to get the money to increase the busi-
ness of his partnership with House's son; all which was
known to House. Williams having been discharged in
bankruptcy, the bank sued Rood, Bulkeley and House as
joint makers of the note, and recovered judgment against
them all as jointly liable as makers, and Bulkeley and Rood
paid House's share of the judgment. We submit that this
joint judgment was conclusive against House that he was a
joint maker, and not merely a guarantor as he claims. *Wal-
ler* v. *Campbell*, 25 Ala., 544; *Hendrick* v. *Whittemore*, 105
Mass., 23, 31; Freeman on Judgments, § 23. The judgment
does not prevent House from showing that he signed at
Bulkeley's request, or any other fact legally showing that
though they were joint makers, and that as between them
Bulkeley should bear the whole burden of the obligation.

What we claim is that the judgment is conclusive that House was a joint maker of the note, and not a guarantor, as he now claims to be. But if this be not so, it has almost without exception been held that when several persons sign a note as sureties, a parol agreement made by one with the maker or holder of the note, that the other sureties are to be regarded as to him as principals, and that he shall be held only as surety for them, is not binding on the other sureties unless assented to by them. The real claim here is, that although House became a maker of the note, yet there was a verbal arrangement that his liability should not be that of a maker but that of a guarantor. As against the bank, the holder, it is clear that House could not have shown that by a parol agreement his liability was not that of a maker, but only of a guarantor. *Allen* v. *Rundle*, 45 Conn., 528, 536; *Same case*, 50 id., 1, 9. But it may be claimed that House by adding the word "surety" to his name made his signature ambiguous, and that evidence might be offered to show for whom he was surety. But it has always been held that the only effect of the addition of "surety" to the name is mere matter of description, showing only what position the signer occupied to the person who received the money. *Bond* v. *Storrs*, 13 Conn., 416; *Hunt* v. *Adams*, 5 Mass., 358; *McGee* v. *Prouty*, 9 Met., 547; *Harris* v. *Brooks*, 21 Peck., 195; 1 Parsons on Bills & Notes, 233, note, and cases cited. The decisions hold that the same principle applies to sureties among themselves, and that where several persons actually sign the same instrument in the same capacity, a right of contribution arises by implication of law, which no one of them can defeat by an agreement with some other person that he shall not be liable for contribution to them. *Warner* v. *Morrison*, 3 Allen, 566; *Monson* v. *Drakeley*, 40 Conn., 552. The real claim here is, that although House did in fact become a joint maker of the note, yet it was agreed by the bank and Williams that he should have the right to treat Bulkeley and Rood as principals, and not be liable to contribute to them, even if they were in fact co-sureties. So Bulkeley

and Rood were to be deprived of their rights by an agreement made by House with the bank and Williams. It is clear that this could not be done. If House had wished to become a guarantor he should have made himself one. The difficulty evidently was that the bank would only loan the money upon a note when he was a joint maker, and he attempted to combine the position of joint maker to the bank, and guarantor so far as Bulkeley and Rood were concerned. A curiously similar case is found in *Whitehouse* v. *Hanson*, 42 N. Hamp., 9. There *A*, *B* and *C* signed a note, *B* and *C* being sureties for *A*, but that fact did not appear from the note. *A* took the note to *D* and asked him to sign it, telling him that *B* and *C* were principals, and that he would only become liable as guarantor for them. *D* thereupon signed it, adding to his name the word "surety." *D* had to pay the note, and sued *B* and *C*, claiming that by his agreement he could treat them as principals, but the court held that he could not, and that the agreement of *A* was not binding on *B* and *C*, and says, as to the first two signers, (p. 21:) "By signing they assume the liabilities of sureties merely, and no third person by his own act merely, without their consent, can increase or change to their disadvantage the obligations they have assumed. They can be made liable as principals on a note they have signed as sureties by their own act alone. * * * The party then who asserts that the sureties for the principal debtor have become principals as to him, must prove that he assumed the relation of surety at their request and for their accommodation." See also *Warner* v. *Price*, 3 Wend., 397; *Norton* v. *Coons*, 3 Denio, 130; *McGee* v. *Prouty*, 13 Met., 547; *Simmons* v. *Camp*, 64 Geo., 726; *Stovall* v. *Border Grange Bank*, 78 Va., 188; *McCune* v. *Belt*, 45 Mo., 174; *Kirschner* v. *Conklin*, 40 Conn., 77; *Monson* v. *Drakeley*, id., 552, 559. The real difficulty with the defendant's claim is, that he wanted to occupy one position and have the liabilities of another. If he had wished to be a guarantor he had only to write on the note that he guaranteed it, but, instead of so doing, he became a joint and several maker, by which act

he incurred well-defined liabilities, both to the bank and to the other co-makers, who were sureties, and he can no more deprive the latter of the liabilities he thereby incurred than he could the former. They signed the note with the expectation that he would be equally liable with them, and the note itself showed that he was so. Now he is endeavoring to deprive them of their rights without their consent, by setting up a private parol agreement that he should not be liable to contribute to them, without their consent or knowledge. The utmost he can say is that when he added the word "surety" to his signature, he *supposed* that such addition would only make him a guarantor; but the trouble is that it did not. It is well settled that co-sureties are entitled to share in the securities held by any of them, even if it is agreed by the principal that they shall not. 1 Leading Cases in Equity, 119. So as to collateral held by the creditor; can the principal agree that the sureties shall not have the benefit of it? How can he deprive them of the right of contribution any more than of these rights? Suppose House had signed a guarantee, could Williams have agreed with Bulkeley and Rood that they should, as against House, be guarantors, and not makers or principals? If Williams could destroy rights of Bulkeley by a parol agreement with House, why could he not also deprive House of his legal rights by agreement with Bulkeley? The defendant attempts to apply the principle of estoppel here, and some cases may be found which favor that view; but it will be found on examination that in all of them much stress is laid on the fact that the defendant really believed that all the other makers were in fact principals and had the benefit of the money, whereas here House knew that the money was to be obtained by Williams for his sole benefit, and to enable him to furnish increased capital for his partnership with House's son, whose half of the capital was advanced by House; so that House was in fact much more interested in having the note discounted than Bulkeley, for without it the plan of partnership for his son would have been defeated.

*J R. Buck*, for the appellee.

J. M. HALL, J. From the finding in this case it appears that in 1871 John K. Williams and a son of the defendant were partners in business in the city of Hartford. They desired to increase their capital $6,000. The defendant advanced $3,000 for his son. Williams, in order to raise his share, procured the plaintiff Bulkeley, and D. A. Rood, to execute with him a joint and several note for $3,000, payable to the Society for Savings of Hartford. Williams then took the note to the Society for Savings for the purpose of obtaining the money on it. The Savings Society objected to loaning the money, on the ground that the principals of the note were all engaged in active business, and insisted that some person of means who had retired from active business should sign the note as surety for Williams, Bulkeley and Rood. Williams then left the note with the savings bank, and the next day applied to the defendant, and told him that he (Williams), Bulkeley and Rood had made a joint and several note for $3,000, which was at the Society for Savings, and that the money could not be obtained on the note without a satisfactory surety to the principals, and requested the defendant to go to the savings bank, examine the note, and sign it as surety for the principals. This information by Williams was the first knowledge the defendant had, that such a note had been contemplated or executed.

On the same or the following day, pursuant to Williams's request, the defendant went to the savings bank, examined the note, and, being further requested by the savings bank to sign as a surety for Williams, the plaintiff and Rood, and believing the statement of the note itself to be true and that Williams, Bulkeley and Rood were joint and several makers and principals thereof, signed the note as surety for the apparent principals. He affixed his signature several lines below their signatures, and prefixed to his name the word "Surety." The note as formally signed was as follows:—

VOL. LXII.—30

" $3000—                        HARTFORD, Feby. 21st, 1871.

" On demand for value received we jointly and severally promise to pay to the Society for Savings, at the office of said Society in Hartford, three thousand dollars, with interest semi-annually.

JOHN K. WILLIAMS.

WILLIAM H. BULKELEY.

D. A. ROOD.

Surety, WM. W. HOUSE."

Williams obtained and used the money in his business, became bankrupt, and obtained a discharge in bankruptcy. The sum of $400 was realized from his bankrupt estate on the note, and the balance was paid in equal shares by the plaintiff and Rood on a judgment obtained against them and the defendant by the bank. The plaintiff brings this action to compel contribution from the defendant.

Upon the trial of the action in the court below the plaintiff offered parol evidence to prove that, although his name appeared on the note as a principal, yet he had an understanding with Williams, the first signer of the note, that he should be a surety for him. To the introduction of this evidence the defendant objected, on the ground that it did not appear that the defendant had any knowledge that either of the signers of the note had signed it, or agreed to sign it, in any other capacity than that indicated by the note itself at the time he (the defendant) signed it. The court sustained this objection and rejected the testimony, but offered to admit the same if the plaintiff could show that the defendant had knowledge when he signed the note that either the plaintiff or Rood had in fact signed the note as surety for Williams, or that there was any agreement or understanding between the defendant and either the plaintiff or Rood that they or either of them were to sign the note as surety for Williams.

The record shows that the plaintiff attempted to prove such knowledge, agreement or understanding on the part of the defendant, but failed, and the court expressly finds " that from all the evidence in the case the defendant had

no knowledge that the plaintiff and Rood, or either of them, had signed the note in any other capacity than as joint and several makers with Williams."

The action of the court in rejecting the evidence offered by the plaintiff, and in rendering judgment for the defendant upon the facts found, are the errors assigned in the reasons for appeal.

In considering the questions involved it should be borne in mind that this is an action for contribution. Contribution does not rest upon contract, but on the broad equitable principle that equality is equity. Justice and fair dealing demand that where one or more parties sign the same obligation and become equally obligated in precisely the same degree thereby, and stand upon the same footing as to their liabilities thereunder, one of the number shall not be compelled to assume the whole burden for his associates, but may compel them to share equally with him any loss that may occur as the result of their joint liability. In actions for contribution therefore, the principle seems now to be well established, that parol evidence is admissible to show the true relations existing between the several parties bound by a written obligation. Under this rule some of the apparent principals may be shown to be sureties, and all apparent sureties may be shown to be principals.

Thus in *Robison* v. *Lyle*, 10 Barb., 512, the court held that, " as between the makers of a promissory note and the holders, all are alike liable; all are principals; but as between themselves, their rights depend upon other questions, which are the proper subject of parol evidence. On the trial of an action, therefore, between the signers of such a note, it is right to receive extrinsic proof to show which of the parties signed the note as principal and which as sureties." See also, to the same effect—Brandt on Suretyship, § 226; 2 Randolph's Commercial Paper, § 908; *Apgar's Administrators* v. *Hiler*, 4 Zabr., 815; *Fernald* v. *Dawley*, 26 Maine, 470, 474; *Mansfield* v. *Edwards*, 136 Mass., 15; *Thompson* v. *Taylor*, 12 R. Isl., 109; *Adams* v. *Flanagan*, 36 Verm., 400; *Barry* v. *Ransom*, 2 Kern., 462.

Such evidence is not offered to contradict or vary the contract contained in the writing, but simply to show the actual relations subsisting between the joint makers of the note and the real nature of the contract between them. Such facts are not a part of the contract and do not affect its terms, but are wholly collateral to it.

To support his claim for contribution therefore, the plaintiff clearly had the right to show his true relations to the note, and this, without regard to the knowledge of the defendant, and in rejecting this evidence the court below erred. We are satisfied however, from the other facts found by that court, that the exclusion of this evidence did the plaintiff no harm. For, in order to hold the defendant liable for contribution, it was incumbent on the plaintiff to prove not only that he was a surety for Williams as he claimed, but also the further fact that the defendant was a *co-surety* with him for Williams. This latter proposition the finding of the court below distinctly negatives.

If the plaintiff was unable to prove that the defendant had agreed to become a surety for Williams only, upon what theory of justice or morals can the plaintiff demand that the defendant share with him a liability which he never assumed?

It is an unyielding principle of equity that the action of contribution shall never be used to enforce an unjust and inequitable demand. Brandt on Suretyship, § 208, and cases cited.

But the plaintiff claims that the defendant, by his act of signing the note as he did, legally bound himself for the same obligation and to the same extent and degree that *he* was obligated, and that it is of no consequence, as affecting the defendant's liability in this action, whether he knew that the plaintiff was a surety for Williams or not. We are aware that it is laid down in the books that the right of contribution is not affected by the fact that the surety seeking contribution, or from whom it is sought, had no knowledge that the other had assumed the obligation of a surety for the same thing. This is undoubtedly good law. But

can it be seriously contended that the facts in this case show that the defendant's contract and undertaking was the same as that of the plaintiff, even if it be assumed that the plaintiff's claim as to his being a surety only for Williams is correct?

Let us see what the record discloses. That the defendant in this action had no knowledge of the execution of the note in question until informed by Williams is expressly found. That he was informed and believed the note to be the joint and several note of Williams, Bulkeley and Rood, as it appeared to be on its face, is also found. Under such circumstances and with such information and belief he was asked by the bank to sign the note as surety for Williams, the plaintiff and Rood, the apparent joint and several makers of the note, and did so, prefixing the word "*surety*" to his signature.

That the defendant never agreed to become a surety for Williams alone appears conclusively from the facts found by the court below. The three other parties had signed the note and assumed the whole liability incurred by that act, without his knowledge and without any expectation on their part that he was to share their responsibility. Although he went to the bank at Williams's request, yet his undertaking was with the bank alone and not with Williams or the plaintiff. He did not assume the *same degree of obligation* that the plaintiff had assumed. The fallacy of the plaintiff's claim is in the assumption that the defendant had agreed to become a surety for the debt of Williams only. He was careful not to do this. In other words, he intended to become, and did in fact become, a surety for a surety, an undertaking by no means rare or infrequent in commercial dealings. As such a surety he is not liable to contribution. "A supplemental surety for all the prior parties, including the principal as well as sureties, has entered into a still different engagement. His liability is to the holder in case of the default of all those parties. Like a guarantor he is not liable to contribute to the other sureties, because his engagement extends to their responsibility as well as to that

of the maker. As between himself and the other sureties there is no mutuality, and if he is subjected his only remedy is indemnity. A co-surety undertakes with another to be responsible for the debt or duty of a third person. Their obligation though several is not collateral, but is for the same thing." *Monson* v. *Drakeley*, 40 Conn., 559.

The plaintiff claims, as matter of law, that because the defendant signed as a surety he thereby became surety for the actual principal and cannot be permitted either to contradict this or to show for whom he actually did become surety. This claim cannot be sustained without establishing a rule liable to work great injustice. The contract of suretyship is construed strictly, both at law and in equity, and the liabilities of the surety cannot be extended by implication beyond the precise terms and scope of his engagement. *United States* v. *Price*, 9 How., 91; *Lockwood* v. *Jones*, 7 Conn., 435.

As against the demand for contribution the defendant manifestly has the same right to show his relation to the makers of the note that the plaintiff has. Both principle and precedent sanction this right. Exercising this privilege, the defendant has conclusively proved that he signed the note with the express understanding and agreement with the payee and holder that he was to be a surety for all whose signatures preceded his own, and thereupon the court below held, properly as we think, that as to him and for the purposes of obtaining contribution from him the plaintiff is to be treated as a principal, as he appears to be on the note itself.

But it is suggested that the plaintiff had not asked or procured the defendant or contracted with him to become his surety and had no knowledge that he was to sign as a surety for him and the other signers of the note, and that therefore if the defendant did so, he voluntarily assumed all the responsibilities that the plaintiff had assumed as surety for Williams alone. Is this position tenable? Can the right of the defendant to agree with the payee of the note to become a surety for all the other signers of the note and with-

out their knowledge or consent be questioned? We know of no principle of law that prevents a person from obligating himself to pay the debt or to become responsible for the obligation of another if he so desires. If he suffers loss thereby he may be without legal redress, but his right to make such an agreement must be conceded. The defendant in this case was evidently not willing to become a surety for Williams alone but was ready to become a surety for all. So long as he did not thereby change the obligations, increase the liabilities or interfere with the rights of the other sign-ers, we are unable to see how by agreeing with the payee to become a surety for the fulfillment of their obligations, he in any manner became obligated to share with them or either of them the burdens of a contract which existed prior to and independent of his undertaking.

But the plaintiff says that if the defendant had been obliged to pay this note, he could not have compelled con-tribution from the plaintiff unless he is held to be a co-surety with him for Williams. This is doubtless true, and forcibly illustrates the justice and equity of the defend-ant's position. He is not claiming but resisting contribution. The fact that he could not compel the plaintiff to contribute does not give the plaintiff the right to compel contribution from him. The law covering the exact position of the par-ties in this case is well stated as follows:—" If the sureties are not bound for the same thing or do not occupy towards each other the same relative positions, then one of these results may follow.—1st. The surety paying the debt may have no right to contribution.—2d. A surety first in point of time may have no remedy against one who is subsequent. —3d. Or a subsequent surety may have no remedy against the first." Bispham's Principles of Equity, 308.

An application of this doctrine in a case closely analogous to this is found in *Harris* v. *Warner*, 13 Wend., 402. In giving the opinion of the court, NELSON, J., said:—" Here the defendant is resisting a claim against him founded upon the position that he is a co-surety with the plaintiff and bound to contribute. Now upon the principles of the above

case (*Warner* v. *Price*, 3 Wend., 397,) the plaintiff must show positively or by legal intendment that the defendant has placed himself in that relation to him. The defendant had a right to qualify his contract as he pleased consistently with the rules of law. He refused to sign as co-surety with the other sureties and did sign as surety for the whole, in which there is certainly nothing unlawful. They had the benefit of his name and it did the other sureties no harm. I admit that, had the money been collected from the defendant, he could not have recovered from the other sureties or principals, unless he could have shown what was required in *Warner* v. *Price* and what we now require as to him here, a contract to stand in the relation charged. He is not a co-surety as between himself and the other sureties so as to enable them or either of them to obtain contribution."

In *Paul* v. *Berry*, 78 Ill., 158, the court held " that as between the makers there arises no presumption from the note or the judgment that the first signer or any other number less than the whole is or are to be treated as principal or principals and the others as co-sureties, but it rests in evidence to be introduced *aliunde* the note and judgment, to determine what relation they sustain towards each other; that the burden is upon the plaintiff to prove that he is surety not only as between himself and another whom he claims to be principal, but also as between himself and another he claims to be a co-surety."

The right of the defendant to sign this note as he did without thereby rendering himself liable to contribution at the suit of the plaintiff, is supported by many authorities. On account of the practical importance of this question which we have not had occasion to pass upon directly before, we will refer briefly to a few of the leading cases on this subject.

In *Craythorne* v. *Swinburne*, 14 Vesey, 160, an early and oft-quoted case, it appeared, as in this case, that the undertaking of the last surety was without the knowledge or privity of the former sureties and that the money on their

contract could not be obtained without the additional signature of a surety. Yet the court held that there was no duty of contribution among the two classes of sureties.

Again in *Sayles* v. *Sims*, 73 N. York, 552, a case almost identical with this, it appeared that a joint and several promissory note executed by *B* and the plaintiff, was indorsed by the defendant and then negotiated. Subsequently, at the request of the maker and without knowledge that the plaintiff was surety for *B*, the defendant signed the note as maker, adding to his signature the word "Surety." The plaintiff paid the note and brought this action for contribution, claiming that the parties were in fact co-sureties for *B*. The court held that it appeared both by the circumstances and by the words of the contract that the defendant intended to limit his liability to that of surety for both the other makers, and that the action for contribution could not be maintained. In giving the opinion of the court CHURCH, C. J., held that the word "surety," when thus added to a signature, should be construed the same as if the words "Surety for the above names" had been employed.

In *Oldham* v. *Broom*, 28 Ohio St. 53, the court says:— "Where there is no understanding with prior parties, and nothing in the form of the contract to prevent, and no fraud on the rights of the first signer, we think it is clear that another who afterwards signs as an accommodation party may stipulate as to the terms of his liability."

In *Sherman* v. *Black*, 49 Verm., 198, the defendant signed a note with *L*, who appeared on the face of it to be a principal but was in fact a surety for the defendant. In order to get the note discounted *L* took it to the plaintiff and asked him "if he would sign it with him and the defendant," and the plaintiff signed it, adding to his signature the word "surety," supposing from the manner in which he was asked to sign it and from its appearance that he was signing as a surety for both *L* and the defendant, and regarding them as principals. In an action for contribution the court held that the plaintiff was surety for and not co-surety with the defendant. The court, in giving the opinion, cited the

following language of REDFIELD, C. J., in *Keith* v. *Goodwin* 31 Verm, 268:—"When there is anything in the form of the contract or the nature of the transaction to show that the subsequent sureties did not expect to be holden as co-sureties for all the former signers, they are entitled to full indemnity from each of the others or all jointly."

. In *Robertson* v. *Deatherage*, 82 Ill., 511, the court held " that where a party signs a note as security for one who is himself only a surety for the principal maker, he is not liable in a suit for contribution by the one for whom he signed as security. * * * He did not directly or indirectly agree with the others that he would become a co-surety, nor did he do anything from which it could be reasonably inferred that he so intended." See also *Keith* v. *Goodwin*, 31 Verm., 276; *Adams* v. *Flanagan*, 36 id., 400; *Bowser* v. *Rendell*, 31 Ind., 134; *Bobbitt* v. *Schryer*, 70 id., 517; *Melms* v. *Werdehoff*, 14 Wis., 21; *Williams* v. *Glenn*, 92 N. Car., 253; *McMahon* v. *Geiger*, 73 Mo., 149. We might multiply citations in the same line, but we think we have cited enough to show clearly the law controlling this case and to abundantly justify the judgment of the court below in holding that the defendant is not liable for contribution in this action.

Perhaps before closing we should notice the claim made in the plaintiff's brief as to the effect of the judgment obtained by the bank against all the signers of the note, including the defendant. It is urged that the defendant is by that judgment concluded from showing in this action the actual relation he sustained to the defendant as a signer of the note in question. We do not so understand the legal effect of that judgment. A judgment against co-defendants creates no liability between them if none before existed. "Parties to a judgment are not bound by it, in a subsequent controversy between each other, unless they were adversary parties in the original action. If *A* recovers judgment against *B* and *C* upon a contract, which judgment is paid by *B*, the liability of *C* to *B* in a subsequent action for contribution is still an open question, because as to it no issue was made or tried in the former suit. As between the sev-

Bulkeley *v.* House.

eral defendants therein a joint judgment establishes nothing but their joint liability to the plaintiff. Which of the defendants should pay the entire debt, or what proportion each should pay in case each is partly liable, is still unadjudicated." Freeman on Judgments, § 23.

There is no error in the judgment appealed from.

In this opinion FENN and ROBINSON, Js., concurred.

CARPENTER, J., dissenting. There are certain fundamental legal principles applicable to this case, concerning which we are all agreed:—First, that the right to contribution does not depend upon a contract between the parties, but results from the equitable principle that where two or more persons sustain the same relation to a debt or obligation, no one of them, as between themselves, shall be compelled to bear the whole burden, but all may be required to contribute equally. Equality is equity. Second, that the relation of principal and surety is founded in a contract express or implied. That relation never results from mere operation of law, but is the result of an express contract between the parties, or a contract which may fairly be implied from the position in which the parties have intentionally placed themselves. A right to contribution necessarily results from the first, and a right to full indemnity from the second.

There are certain facts also concerning which there is no dispute:—That, as between the four makers of the note, Williams was the only principal, and that each one of the other three was a surety for him; that all signed the note before it became operative by the payment of the money to Williams; and that Williams obtained a discharge in bankruptcy, after which a joint judgment was rendered in favor of the payee against the three sureties, which judgment was paid by the plaintiff and Rood. From these premises, of law and fact, the conclusion is inevitable that the plaintiff and defendant were co-sureties, and that the plaintiff is entitled to contribution; unless the circumstances now to be alluded to compel us to a different conclusion.

It is said that Williams and the bank each asked the defendant to sign as surety for Bulkeley and Rood as well as for Williams, and the fact is emphasized that he did not become a surety for Williams alone. Be it so. This concession, however, does not aid the defense. The fact still remains that he was surety for the principal debtor, and none the less so for his being, in some sense, a surety for Bulkeley and Rood. Such a suretyship, if any existed, could in no wise affect the suretyship for Williams.

But the defendant was not a surety for Bulkeley. I am aware that the court below says:—"The court also finds, from all the evidence in the case, the relation between the plaintiff and defendant to be that of principal and surety." I regard that as a conclusion of law, for the conceded facts abundantly show that it was legally impossible for him to have been a surety for Bulkeley in the same sense that he was surety for Williams. Bulkeley never requested the defendant to become a surety for him, and nothing occurred between the parties from which a contract of suretyship can be implied. No reason existed for such a contract. It would have added nothing to the security of the bank, and would have been of no advantage to either the plaintiff or defendant. The request by Williams and the bank that the defendant should sign the note as surety for Bulkeley is a strange one. It is impossible to see that a compliance with that request would have been of the slightest benefit to any one. But be that as it may, it is certain that it did not establish, nor tend to establish, between these parties the relation of principal and surety. Nor is the defendant's intention to sign as such surety of any account. The relation of principal and surety could not spring from the secret intention of one of the parties. Neither is the word "surety," prefixed to the name of the defendant, of any avail to show that he was surety for another surety. Full effect is given to that word when it is shown that he was surety for Williams. But there is a sense in which the defendant might have become a surety for Bulkeley without his knowledge, and that is by a guarantee. A guarantee is not the contract

expressed in the note, but is collateral to it. Such a contract the defendant was not asked to sign; he was asked to sign the note, and he signed it. He thereby assumed a primary and absolute liability, and not a collateral and contingent one. The suit on the note was against the three sureties as makers, and resulted in a joint judgment against them. That conclusively fixes the defendant's liability as a joint obligor with Bulkeley and Rood.

The legal result of the transaction was a promissory note signed by one principal and three sureties. As between the bank and those who signed the note, all were makers and jointly liable. As between the makers themselves, Williams alone was principal, and the other three were co-sureties. *Monson* v. *Drakely*, 40 Conn., 552.

The only ground on which the defense rests is that House not only became a surety for Williams, but also, at the same time and by the same act, became a surety for Bulkeley; that is a surety for a surety. That such a relation may legally exist is not denied, but that Bulkeley and House ever entered into such a relation is denied. And the bank and Williams had no authority to place Bulkeley in that position.

Let us test the soundness of this defense. If the relation of principal and surety exists between these parties then House is a surety as to Bulkeley, and Bulkeley is a principal as to House. Certain legal consequences necessarily follow from this relation,—and among them is this; if the surety pays the debt he is entitled to indemnity from the principal. Now it is conceded that if House had paid this debt, as he might have been compelled to do, he would have had no claim against Bulkeley. That seems to amount to a legal demonstration that the relation does not exist. The defense then is driven to assume this position—that House is a surety for Bulkeley, but Bulkeley is not a principal. In other words, one half of the relation of principal and surety exists, and that is sufficient as a defense to this action; but the other half does not exist, and therefore House, had he paid the debt, would not have been entitled to indemnity from Bulkeley. But that cannot be so. If the

relation exists as to one it exists as to both, and the right to indemnity necessarily follows. There is no middle ground.

One thought more. Here is a judgment against Bulkeley and House. House is equally liable with Bulkeley. But Bulkeley has paid the whole. He is therefore entitled to contribution unless it can be shown that, as between themselves, it was Bulkeley's duty to pay the whole. No such duty has been shown. Therefore the defendant, as a joint debtor, is liable to contribution.

I am not unmindful of the fact that there are cases which apparently give some support to the position of the majority. One of them, and perhaps the strongest, is Sayles v. Sims, 73 N. York, 552. I will not notice these cases at length, but will say generally that they are not binding in this jurisdiction. They are only valuable as the reasoning by which they are supported commends itself to our judgment. Most of them obviously are not well considered. They are inconsistent with the general principles applicable to the subject, are in conflict with the decided weight of authority, and have little or no foundation in principle.

It seems clear to me that the court below erred, and that injustice was thereby done to the plaintiff.

In this opinion, TORRANCE, J., concurred.