SALVATORE AZZOLINA ET ALS. *vs.* THE ORDER OF THE SONS OF ITALY, CONTE LUIGI CADORNA, No. 440, ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued March 6th—decided May 7th, 1935.

*Josiah H. Peck* and *Morris M. Wilder,* for the appellants (defendants).

*Harry R. Cooper,* for the appellees (plaintiffs).

HINMAN, J.  This action was brought by seven persons as plaintiffs against the named defendant, hereinafter called the Lodge, which was a voluntary unincorporated association formed for fraternal and social purposes, located in Meriden, and one hundred and eight individual members of that association.  The case was duly referred to a state referee, who heard evidence at great length on thirty-one days, and made report to the Superior Court.  The pleadings and proceedings following the report of the referee are complicated and superficially confusing, and there is no occasion to detail them here.  The assignments of error are numerous but those pursued by the appellants in brief and argument may be concentrated into a few topics.  Such facts as are deemed essential to the discussion are mentioned in the course of the opinion.

The original complaint in two counts alleged that the Lodge gave notes, one dated December 20th, 1928, for $1785, and another dated February 20th, 1929, for $1775, which the plaintiffs indorsed for accommodation of the Lodge, the latter failed to pay, and the

plaintiffs were compelled to and did pay, and made a general claim for damages. The nature and scope of the action, as construed and tried by the parties, are indicated in the report and finding of the referee, and appear to be that the plaintiffs, members of the Lodge, claimed to have been compelled to pay a debt of the Lodge, for which the individual defendant members, as well as the Lodge, were liable, and the plaintiffs were seeking to recover from each of them his proportionate share of the common indebtedness so paid by the plaintiffs. It also appears from the report that the major defense interposed was that the building transactions out of which the indebtedness arose were not a project of the Lodge but of an organization of individual members thereof called the "Sons of Italy Club" and the obligations growing out of it were those of the Club and of a corporation subsequently formed called "Sons of Italy Realty Company," and not of the Lodge. Other defenses included denial by all the appearing defendants of any participation in or authorization of the transactions, alleged limitations in the constitution and by-laws of the Lodge, and that liability, if any, of members to pay the obligation discharged by the plaintiffs would be joint and all members were not made parties. The "major defense" above mentioned was not formally pleaded. While the allegations of the complaint were somewhat obscure in disclosure that the action was one for contribution (Form 304, Practice Book, p. 238), the record leaves no doubt that upon the hearings and thereafter it was regarded by the parties and tried as, and the findings of the referee manifestly were addressed and appropriate to, an action for contribution.

On the hearings before the referee it developed from the evidence introduced, and the referee found, that the facts pertaining to and leading up to the notes

payment of which was alleged in the original complaint were, shortly stated, as follows: In August, 1925, claims of the Suzio Construction Company growing out of the construction of a building for a home for the Lodge were settled by the giving of a mortgage for $17,000 from the Lodge to the company, a second mortgage for $4000 to a third party, the proceeds of which were paid to the company with other cash, and a note for $6145 to the company, signed on behalf of the Lodge by the president and secretary, and indorsed by eleven members, including the plaintiffs. This is the note referred to in the amendment to the complaint (third count) hereinafter mentioned. Subsequently, through default of interest payments, the entire principal of this note became due and payable, the company pressed for payment, and as a result of negotiations for settlement offered to accept $4000 cash. By this time (February, 1928) the Lodge was insolvent and without credit and on February 14th a proposal to borrow $4000 upon notes in the name of all the members was rejected by the Lodge. On February 15th the plaintiffs, indorsers of the note and liable as such, borrowed $4000 on two notes of $2000 each to Meriden banks, purporting to be notes of the Lodge indorsed by the plaintiffs, although the banks relied entirely on the credit of the plaintiff indorsers, and with the proceeds paid the company and took up the $6145 note. The notes mentioned in the original complaint were renewals of the two $2000 notes so given to raise the money to settle the company note.

The referee found, as conclusions of fact, that the building contract with the company and the $6145 note to it were executed on behalf of the Lodge by its authorized officers and agents, and that the execution of the note was ratified and adopted at subsequent meetings of the Lodge; that the Lodge vote of Febru-

ary 14th, 1928, above mentioned, was a repudiation by the Lodge and its individual members of any liability for the indebtedness represented by the note; and that the notes of February 15th, 1928, and all renewals thereof (of which the notes described in the original complaint were the latest) were the sole and direct obligations of the plaintiffs and not of the Lodge.

It thus appeared from the evidence as to the history of the entire transaction that although the notes described in the complaint were not obligations of the Lodge, and the plaintiffs, in being compelled to pay them, did not, by that act alone, discharge any indebtedness of the Lodge itself, they did, on February 15th, 1928, pay a debt of the Lodge under the original note of August 17th, 1925, with funds secured by loans upon notes of which those described in the complaint were renewals. Therefore the referee in his report recommended that the complaint be amended to conform to the facts as so proved. It was in accordance with this suggestion that the plaintiffs eventually, with the permission of the court, filed an amendment to the complaint which added a third count, setting up the giving of the $6145 note of the Lodge to the Suzio Construction Company, indorsement of it by the plaintiffs, and compulsory payment of it by them on February 15th, 1928. It appears from the record of subsequent proceedings before the referee on recommittal that he then stated that the amendment substantially conformed to his suggestion.

Error is assigned in granting permission to amend the complaint, but we regard the suggestion of the referee and the consent of the court to amendment in compliance with it as fitting and abundantly justified. The state of proof from the evidence introduced was such as to warrant amendment of the complaint. Practice Book, § 96; *Mazulis* v. *Zeldner*, 116 Conn.

314, 317, 164 Atl. 713. The amendment worked no substantial change in the cause of action; it remained, not an action upon a note or notes, as such, but for recovery on account of payments made by the plaintiffs to discharge an indebtedness which was evidenced by a note. The deficiency in the complaint was in not carrying the statement of the transaction back to the original obligation. The amendment did not, as in *O'Hara* v. *Hartford Oil Heating Co.,* 106 Conn. 468, 137 Atl. 438, count upon a different contract or other cause of action foreign to that relied upon in the original complaint. The defendants were afforded opportunity to meet the amendment by pleading and availed of it to the extent of eleven defenses. The filing of the new pleadings did not affect the order of reference. Practice Book, § 168.

The question then presented, whether the pleadings afforded necessity or occasion for the introduction of further evidence, rendered appropriate a recommittal to the referee—the authority best situated to determine it by reason of familiarity with the evidence already received and its scope—and for further hearings and findings if required. Practice Book, § 175; *Hoyt* v. *Pomeroy,* 87 Conn. 41, 48, 86 Atl. 765; *Kane* v. *Kane,* 118 Conn. 291, 294, 172 Atl. 84. As the court, *Foster, J.,* remarked in recommitting the case, the referee "thereupon performs not a new duty but completes the duty originally placed upon him and makes a final report on the amended case."

The supplementary report of the referee to the effect that the situation did not require or warrant the presentation of further testimony and its acceptance by the court appears to be safely sustained by the record before us. Where an amendment to a complaint is made after trial to correspond to the proof offered and neither under its allegations nor those of

subsequent pleadings is any issue presented which has not been litigated and in regard to which all parties have not had the opportunity fully to present evidence, unless the court deems justice to the parties to require further hearing it may decline to hear further evidence. *Bennett* v. *Collins,* 52 Conn. 1, 4; *Mazulis* v. *Zeldner,* 116 Conn. 314, 318, 164 Atl. 713.

In a defense (ninth) to the third count of the complaint, the defendants alleged violation by the Suzio Construction Company of its construction contract through defective workmanship and materials. This defense was demurred to on the ground that the allegations are immaterial and irrelevant to the cause of action set forth by the count to which it was directed, and we so regard them. Although the trial court sustained the demurrer on another ground set up in it (that it appeared by the referee's finding and report that the issue of liability of the defendants growing out of the construction of the building and upon the note had already been fully litigated), as the demurrer was properly sustained it is immaterial that the ruling was placed upon a different ground. *Giannattasio* v. *Silano,* 115 Conn. 299, 301, 161 Atl. 336; *Aetna Life Ins. Co.* v. *Richmond,* 107 Conn. 117, 119, 139 Atl. 702. In the action which, it appears from the referee's report, the company brought upon its claim under the contract for the construction of the building, defective or improper performance would have been a ground of defense; but it further appears that under authority granted by vote of the Lodge "a settlement of the pending litigation and of the entire indebtedness under the [contract] was effected" and the $6145 note, set up in the third count, was given as part of the performance by the Lodge of the compromise agreement. Such an agreement, if free from fraud, mistake or undue influence, of which there is no sug-

gestion here, is conclusive between the parties. *Thomas' Appeal*, 85 Conn. 50, 54, 81 Atl. 972; 12 C. J. p. 340. When the parties to a controversy compromise and fairly agree upon the amount due, and the debtor executes and the creditor accepts a note therefor, it will be binding upon them, and the maker, when sued upon it, cannot utilize a defense which would have been available in the suit upon which the compromise agreement was founded. *Kiler* v. *Wohletz*, 79 Kan. 716, 101 Pac. 474, 54 L. R. A. (N. S.) 11; *Draper* v. *Owsley*, 15 Mo. 613, 57 Am. Dec. 218; 5 R. C. L. p. 894. The defendants, at most, have no greater rights than the Lodge in a suit upon the note.

The referee found and reported that of the defendant members of the Lodge seventy-five, named in a schedule (A) included in the report, voluntarily participated in the building project while it was being carried on by the Lodge, also that twenty other members not named as defendants so participated, but four of the latter had paid the plaintiffs $40 each and thereby discharged their obligation to them. Therefore the total number of participating members, including the seven plaintiffs, was found to be one hundred and two; the whole number of members of the Lodge at the time of the building operations was one hundred and seventy. The referee, further, stated alternative conclusions as to the per capita share of the amount—$3660.91—which he found to have been the amount of the net expenditure by the plaintiffs, due from each defendant liable to contribute to the plaintiffs, according to whether all of the members of the Lodge or only those voluntarily participating were held liable by the court as a matter of law. In rendering judgment, however, the trial court adopted neither alternative but adjudged "that the plaintiffs recover of the defendants . . . $5025.19," a sum appar-

ently arrived at by addition of interest to the base amount of $3660.91. In this we find error.

In the case of a voluntary association formed for the purpose of engaging in business and making profits, its members are liable, as partners, to third persons upon contracts which are within its scope and are entered into with actual or apparent authority, and a joint judgment against them is justified. *Bennett* v. *Lathrop,* 71 Conn. 613, 42 Atl. 634; *Davison* v. *Holden,* 55 Conn. 103, 10 Atl. 515; *Lawler* v. *Murphy,* 58 Conn. 294, 313, 20 Atl. 457; 3 Page, Contracts, p. 3168; 25 R. C. L. p. 64. When a member of such an association cannot obtain reimbursement from it for liabilities which he has properly discharged, he is entitled to contribution from all the other members. 47 C. J. p. 809. But when, as here, the purpose of the association is not business or profit, the liability, if any, of its members is not in its nature that of partners but that arising out of the relation of principal and agent, and only those members who authorize or subsequently ratify an obligation are liable on account of it. A person may authorize the obligation arising from a contract either by becoming or remaining a member knowing that such a contract would be reasonable and proper in order to carry out the purposes for which the association was formed or, if the contract is outside the scope of those purposes, by assenting to it or participating in the undertaking. 3 Page, Contracts, pp. 3169, 3170; Page, Contracts, Supplement, Vol. 1, p. 1237; *Stege* v. *Louisville Courier Journal Co.,* 196 Ky. 795, 245 S. W. 504; *Vader* v. *Ballou,* 151 Wis. 577, 579, 139 N. W. 413, 7 A. L. R. 216. *Ash* v. *Guie,* 97 Pa. St. 493, 39 Am. Rep. 818, is a case in some respects analogous to the present one and illustrative of the principle and its application. The proof failed to show that the building of a temple was within the pur-

poses of the Masonic Lodge, of which the defendants were members, or that any committee or members had a right to contract debts of the Lodge for building the temple, but it was held (p. 500) that those members who engaged in the undertaking of erecting the building or borrowing of money therefor, or assented to or subsequently ratified it were liable for the debts thereby incurred. Among other decisions to like effect are *Ehrmanntraut* v. *Robinson,* 52 Minn. 333, 54 N. W. 188; *Sizer* v. *Daniels,* 66 Barb. (N. Y.) 426, 432; *Stege* v. *Louisville Courier Journal Co.,* supra; *Lynn* v. *Commercial Club,* 31 S. D. 401, 407, 141 N. W. 471; *Devoss* v. *Gray,* 22 Ohio St. 159, 169; *First National Bank* v. *Rector,* 59 Neb. 77, 80 N. W. 269.

Actions for contribution are based upon the principle, equitable in origin but now recognized in courts of law, that where one person has been compelled to pay money which others were equally bound to pay, each of the latter in good conscience should contribute the proportion which he ought to pay of the amount expended to discharge the common burden or obligation. *Waters* v. *Waters,* 110 Conn. 342, 345, 148 Atl. 326; *Bulkeley* v. *House,* 62 Conn. 459, 467, 26 Atl. 352. As between members of an unincorporated association, each is bound to contribute only his aliquot share. *Hodgson* v. *Baldwin,* 65 Ill. 532; *Lorimer* v. *Julius Knack Coal Co.,* 246 Mich. 214, 224 N. W. 362, 64 A. L. R. 210; *Hall* v. *Harris,* 6 Ga. App. 822, 65 S. E. 1086; 5 C. J. pp. 1340, 1364; 13 C. J. p. 836. The judgment should have awarded to the plaintiffs, as against each of the defendants named in Schedule A of the referee's report as participating members, his aliquot share of the entire net amount expended by the plaintiffs to ·pay the note described in the third count ($3660.91, being $3994.66, the sum contributed

by the plaintiffs to pay the note, less $128.75 paid them by the Lodge toward interest on renewal notes and $160 received from nondefendant members) with interest from February 15th, 1928, the date on which that note was paid, the share of each ascertained by dividing the total amount by one hundred and two, the number of defendants found to have participated in the building project plus the twenty participating members not made defendants and the seven plaintiffs.

Another assignment is based upon the failure to make the remaining members defendants. There is no reason apparent for regarding nonjoinder as a defect in an action for contribution by each defendant of his aliquot share only, in which the total number potentially liable—here all the participating members —is the basis of computation of the share of each defendant, and he is not prejudiced by the absence as parties of others similarly situated, so long as their liability is considered in ascertaining the amount recoverable from each defendant. One entitled to contribution from others may enforce his claim by proceeding against any one or more of the persons liable to him for their proportionate share, without proceeding against all persons so liable. *Payne* v. *Payne,* 129 Wis. 450, 109 N. W. 105; *Lamb* v. *North,* 22 Manitoba, 360. This accords with our present practice, except in cases where special circumstances are such as to render the presence of all parties necessary to a complete determination of their rights. *King* v. *Malone,* 91 Conn. 342, 347, 99 Atl. 691. The general rule is applicable in the present case.

There is error; the case is remanded to the Superior Court with direction to enter judgment in accordance with this opinion.

In this opinion the other judges concurred.