HANOVER INSURANCE COMPANY *v.* FIREMAN'S FUND INSURANCE COMPANY ET AL.
(14083)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and BORDEN, Js.

Argued October 31, 1990—decision released February 5, 1991

*Theodore J. Tucci,* for the appellant (plaintiff).
*John B. Farley,* for the appellee (named defendant).

PETERS, C. J. This appeal concerns the right of an insurer who has paid a fire loss to its insured to recover one half of its payment from a second insurer on a theory either of subrogation or of contribution. The plaintiff, Hanover Insurance Company (Hanover), filed suit against the named defendant, Fireman's Fund Insurance Company (Fireman's), and the Thomas Minogue Agency (Minogue),[1] seeking reimbursement for moneys it had paid on a fire loss suffered by its insured, Anthony's Auto Body, Inc. (Anthony's). The complaint alleged that Fireman's had bound insurance coverage on Anthony's prior to the date of the fire loss, and that this insurance coverage obligated Fireman's to reimburse Hanover for part of the loss. Fireman's denied coverage and raised a special defense that Hanover's suit was time barred under General Statutes §§ 38-97 and 38-98.[2] The trial court rendered judgment, after

---

[1] Because Hanover withdrew its claims against Minogue prior to the trial court's rendering of its decision in this case, Minogue is not a party to this appeal.

[2] General Statutes § 38-97 provides: "The form of policy of fire insurance set forth in section 38-98 shall be known and designated as 'The Stan-

trial, in favor of Fireman's. Pursuant to Practice Book § 4023, we transferred Hanover's appeal to this court and now affirm the judgment of the trial court.

The trial court's memorandum of decision reveals the following facts. Hanover had issued a fire insurance policy covering Anthony's for the period from March 28, 1982, to March 28, 1983. On January 7, 1983, Hanover notified Anthony's of the cancellation of this policy effective February 7, 1983. Later that month, Anthony's contacted a licensed insurance agent affiliated with Minogue in an effort to obtain replacement insurance. Through Minogue, Anthony's was able to obtain an oral binder from Fireman's, which Minogue confirmed with a written memorandum dated January 31, 1983. On February 2, 1983, however, the agent who had given the oral binder for Fireman's discovered that a binder on coverage for auto body shops required an inspection. Unsuccessful in reaching the Minogue agent by telephone, the Fireman's agent mailed him a written memo with this information on the same day.

dard Fire Insurance Policy of the State of Connecticut.' The standard form of policy shall be plainly printed, and no portion thereof shall be in type smaller than the type used in printing such form on file in the office of the commissioner. The provisions of this section shall not limit insurance companies to the use of any particular size of paper or manner of folding the paper upon which their policies may be issued, and each agent who makes, issues or delivers a policy of fire insurance other than the standard form of fire insurance policy shall forfeit for each offense not more than two hundred dollars; but such policy shall be binding upon the company issuing the same to the same extent and on the same conditions as if it had been in the standard form."

General Statutes § 38-98 provides in relevant part: "The standard form of fire insurance policy of the state of Connecticut . . . shall be as follows

* * *

"Suit. No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."

A fire occurred at Anthony's on February 3, 1983, that caused damage in the amount of $232,122, which Hanover paid in full. Although Hanover was aware of Fireman's oral binder by August 3, 1983, it made no formal demand for payment until July 3, 1984, more than one year after the fire loss.

The trial court ruled against Hanover's claim for subrogation on the ground that the oral binder between Fireman's and Anthony's included a one year suit provision pursuant to General Statutes §§ 38-98 and 38-100.[3] Because Hanover had not brought suit within twelve months following Anthony's loss, the court held that Hanover's suit was barred. The court further held that Fireman's had neither waived, nor was estopped from asserting, the one year suit provision as a defense to Hanover's suit.[4]

The trial court also ruled against Hanover on its alternate claim for contribution. The court concluded that Hanover had not been legally obligated to pay the entire fire loss at Anthony's and was barred from seeking contribution for its actions as a "volunteer." It also concluded that Hanover had failed to establish an equitable basis for its claim for contribution.

Hanover's appeal does not challenge the underlying facts found by the trial court but asserts its right to recovery, as a matter of law, without regard to the one

[3] General Statutes § 38-100 provides in relevant part: "Binders or other contracts for temporary insurance may be made, orally or in writing . . . and *shall be deemed to include all the terms of [the] standard fire insurance policy* . . . ." (Emphasis added.)

[4] The court also ruled against Hanover's claim that Fireman's actions constituted a violation of the Connecticut Unfair Insurance Practices Act. Although Hanover, in its preliminary statement of issues, raised a claim of error with respect to this ruling, it has not briefed that claim on appeal and we therefore deem it to have been abandoned. See *Pepe* v. *New Britain,* 203 Conn. 281, 282 n.1, 524 A.2d 629 (1987); *Blancato* v. *Feldspar Corporation,* 203 Conn. 34, 36 n.3, 522 A.2d 1235 (1987).

year suit provision in § 38-98 under a theory either of subrogation or of contribution. We are unpersuaded that Hanover's claims are sustained by the record.

I

As Anthony's subrogee, Hanover had no greater rights against Fireman's than Anthony's possessed and was equally subject to any defenses that Fireman's might have asserted against Anthony's. See *Brown* v. *Employer's Reinsurance Corporation,* 206 Conn. 668, 673, 539 A.2d 138 (1988); *Arton* v. *Liberty Mutual Ins. Co.,* 163 Conn. 127, 139–40, 302 A.2d 284 (1972). Hanover does not dispute these basic subrogation principles but contends, nonetheless, that its subrogation claim is not time barred.

The trial court concluded that the oral binder that Fireman's had issued to Anthony's included the one year suit provision that is part of the standard form of fire insurance policy in this state. Section 38-98 requires such a standard policy to provide that "[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity . . . unless commenced within twelve months next after inception of the loss." Further, § 38-100 includes the terms of the standard fire insurance policy in "[b]inders or other contracts for temporary insurance." It is undisputed that Hanover did not bring suit within one year of the fire at Anthony's.

Despite the clarity of this statutory language, Hanover maintains that the trial court should not have held it bound by the statutory one year suit provision. It claims that the controlling statutes do not govern this case because Fireman's (1) failed, in pleading its statutory defense, explicitly to refer to § 38-100, (2) failed, in the circumstances of this case, to prove the

applicability of the statutory provision, or (3) was estopped from invoking the statutory provision. We are unpersuaded.

## A

Fireman's special defense alleged that Hanover could not recover because it had "failed to file suit within twelve months after inception of the loss in violation of Connecticut General Statute Section 38-97 and Section 38-98." Hanover correctly observes that the special defense should also have mentioned § 38-100 in order to be in full compliance with Practice Book § 109A.[5]

In accordance with the general objectives of our rules of pleading; see *Board of Education* v. *Commission on Human Rights & Opportunities,* 177 Conn. 75, 77, 411 A.2d 40 (1979); the practice book section is designed to assure sufficient notice to the plaintiff of the statutory defense upon which a defendant intends to rely. Its provisions are therefore directory rather than mandatory. *Rowe* v. *Godou,* 209 Conn. 273, 275, 550 A.2d 1073 (1988). In the absence of any showing that either Hanover or the trial court was misled by the failure to cite § 38-100 in addition to §§ 38-97 and 38-98, we conclude that the issue raised by Fireman's special defense was properly before the court.

## B

Hanover claims that Fireman's denial of the existence of any insurance policy or a valid binder disabled Fireman's from proving and prevailing on its statutory defense. This claim comes to us in a number of versions: (1) that Fireman's could not pursue such inconsistent

---

[5] Practice Book § 109A provides in relevant part: "When any claim made in a complaint, cross complaint, special defense, or other pleading is grounded on a statute, the statute shall be specifically identified by its number."

pleadings; (2) that Fireman's was improperly relieved of its burden of proof by the trial court's mischaracterization of the statutory limitation of suit clause as a statute of limitation; (3) that Fireman's did not meet its burden of proof for inclusion of the statutory limitation in its oral binder; and (4) that Fireman's denial was a repudiation of its contractual obligation that excused Hanover from further compliance with conditions incorporated into the binder. We conclude to the contrary.

Hanover's claim with regard to inconsistency in Fireman's pleadings does not warrant extended discussion. Unlike the facts presented by *Montanaro Bros. Builders, Inc.* v. *Snow,* 190 Conn. 481, 489, 460 A.2d 1297 (1983), the record in this case discloses nothing to suggest that Hanover was in any way injured by Fireman's inconsistent defenses. Absent such a showing of prejudice, there is no general prohibition of inconsistent pleadings. See Practice Book §§ 94, 137; *Dreier* v. *Upjohn Co.,* 196 Conn. 242, 245, 492 A.2d 164 (1985). The case of *DeVita* v. *Esposito,* 13 Conn. App. 101, 107, 535 A.2d 364 (1987), cert. denied, 207 Conn. 807, 540 A.2d 375 (1988), on which Hanover relies, does not compel a contrary result because, in this case, it was entirely consistent for the trial court to render a judgment declaring the oral binder issued to Anthony's to be effective while at the same time construing the binder to include the terms mandated by statutory requirements for a standard fire insurance binder.

The record equally fails to establish that Hanover was prejudiced by the trial court's inadvertent mischaracterization of the statutory one year suit provision as a statute of limitation. Hanover is correct that *Monteiro* v. *American Home Assurance Co.,* 177 Conn. 281, 283, 416 A.2d 1189 (1979), holds that the provision is not a statute of limitation. The trial court's memoran-

dum of decision as a whole makes it plain that the court's linguistic lapse was immaterial. The court expressly determined that the one year suit provision was included as a statutorily mandated term in the oral binder. This determination would have been unnecessary if the court had understood the provision to operate as a statute of limitation, rather than a contractual condition of the oral binder.

In making its determination about the effect of the governing statutes, the court correctly held that Fireman's had proven its defense. Although Fireman's was required to prove the terms and conditions of its oral binder, we are unpersuaded, in light of § 38-100, which expressly regulates the content of oral binders, that Fireman's was obligated to introduce evidence of the terms of a written policy of insurance that it never issued.

Finally, Hanover contends that Fireman's denial of the existence of a binder was a breach of contract that excused its subsequent noncompliance with the one year suit provision. The single authority upon which Hanover relies; *Batter Building Materials Co.* v. *Kirschner,* 142 Conn. 1, 110 A.2d 464 (1954); however, supports the contrary proposition.

In *Batter Building Materials Co.,* the issue was whether a repudiation or total breach of a contract containing an arbitration clause excused the nonbreaching party from compliance with that clause. We held that, even in the case of a total breach, " '[t]he contract is not put out of existence, though all further performance of the obligations undertaken by each party in favour of the other may cease. It survives for the purpose of measuring the claims arising out of the breach, and the arbitration clause survives for determining the mode of their settlement. The purposes of

the contract have failed, but the arbitration clause is not one of the purposes of the contract.' " Id., 10, quoting *Heyman* v. *Darwins, Ltd.,* 1942 A.C. 356, 374.

Like the arbitration clause at issue in *Batter Building Materials Co.,* the one year suit provision at issue here was not one of the purposes of the oral binder. Even after a repudiation of the oral binder, the provision continued to govern the time, and mode, of resolving disputes arising thereunder. Thus, Fireman's denial of liability did not excuse Hanover from compliance with the provision requiring suit within one year of the date of loss.

### C

Hanover further maintains that Fireman's is estopped, by virtue of its oral binder, or because of its conduct, from insisting upon Hanover's compliance with the one year suit provision mandated by §§ 38-98 and 38-100. This claim relies, on the one hand, on legal inferences to be drawn from the issuance of the binder and, on the other hand, on inaction or on statements by Fireman's personnel. We agree with the trial court that the record in this case does not establish estoppel.

Hanover's argument on legal inferences is derived from a number of out-of-state cases involving written insurance policies that failed to include a statutory limitation of suit clause. In such circumstances, some courts have held that the issuance of a nonconforming policy may estop the insurer from invoking the statutory protection that it might otherwise have enjoyed. See, e.g., *Peters* v. *St. Paul Fire & Marine Ins. Co.,* 213 F. Sup. 441, 442 (S.D.N.Y. 1963) (dictum); *Aarons Fifth Ave., Inc.* v. *Ins. Co. of North America,* 52 App. Div. 2d 855, 383 N.Y.S.2d 45 (1976); *Becker-Fineman Camps, Inc.* v. *Public Service Mutual Ins. Co.,* 52 App. Div. 2d

656, 382 N.Y.S.2d 122 (1976); *Conte* v. *Yorkshire Ins. Co.*, 5 Misc. 2d 670, 671–72, 163 N.Y.S.2d 28 (1957). We decline Hanover's invitation to adopt these rulings in the context of this case. Principles of estoppel arising out of arguably misleading written insurance policies do not inform a controversy involving a temporary oral binder of insurance whose terms are dictated by §§ 38-100 and 38-98. This case is far more analogous to *Kahn* v. *Lumbermens Mutual Casualty Co.*, 293 F. Sup. 985, 988 (E.D.N.Y. 1968), in which an oral binder was held to include the one year limitation of suit provision that is part of New York's standard fire insurance policy. Hanover does not claim that the terms of the oral binder in any way misled it into believing that any suit it might have brought would not have been subject to the Connecticut one year suit requirement.[6]

Hanover maintains, in the alternative, that even if the one year suit provision were a term of the oral binder, Fireman's, by its conduct, had either waived, or was estopped from raising, the provision. The trial court found that shortly after the fire at Anthony's, Hanover contacted Fireman's, which then denied the existence of a binder. Six months later, on August 3, 1983, Hanover's insurance adjuster notified Fireman's, by certified letter, that Hanover was seeking contribution for payment of the fire loss at Anthony's. Fireman's never responded to that letter. Hanover took no further action until July, 1984, seventeen months after the loss, when it sent another letter to Fireman's demanding payment. Fireman's claims supervisor, responding by letter on August 28, 1984, requested additional information regarding Hanover's claim, and thereafter in another letter, dated November 12, 1984,

---

[6] Hanover does not allege, nor is there any evidence to support the allegation, that Fireman's and Anthony's had orally agreed to insurance coverage terms that expressly excluded a one year suit provision.

denied the claim. The trial court held that this evidence failed to support Hanover's waiver or estoppel claims. We agree.

Our review of the trial court's determination is guided by the principle that, because waiver and estoppel are questions of fact; *New York Annual Conference* v. *Fisher,* 182 Conn. 272, 300, 438 A.2d 62 (1980); we will not disturb the trial court's findings unless they are clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). In undertaking this review, we can conveniently distinguish between events that transpired within one year of the fire loss and those that transpired thereafter.

The only possible basis for estoppel within the one year period are Fireman's initial denial of the existence of an oral binder and its subsequent failure to respond to Hanover's August, 1983 letter demanding payment. We agree with the trial court in its rejection of this claim. It is well settled that silence will not operate as estoppel absent a duty to speak. *Eis* v. *Meyer,* 213 Conn. 29, 34, 566 A.2d 422 (1989); *S.H.V.C., Inc.* v. *Roy,* 188 Conn. 503, 511–12, 450 A.2d 351 (1982); *State* v. *American News Co.,* 152 Conn. 101, 113, 203 A.2d 296 (1964); *Flaxman* v. *Capitol City Press, Inc.,* 121 Conn. 423, 430, 185 A. 417 (1936). Hanover was aware of the one year suit provision in § 38-98, yet failed to exercise due diligence in ascertaining whether Fireman's planned to rely on the terms of the provision. Under these circumstances, Fireman's was under no duty to inform Hanover whether it intended to enforce the provision. To borrow the words of one court: "[T]he record is persuasive that this is a case not of the defendants' lulling the plaintiff into a sense of false security but of the latter's sleeping on his rights." *Proc* v. *Home Ins. Co.,* 17 N.Y.2d 239, 246, 217 N.E.2d 136, 270 N.Y.S.2d 412 (1966).

The trial court also refused to find estoppel or waiver on the basis of representations by Fireman's in August and November, 1984, that postdated the expiration of the one year suit limitation. The court relied on *Hawley Enterprises, Inc.* v. *Reliance Ins. Co.*, 621 F. Sup. 190, 192 (D. Conn. 1985), for the proposition that acts occurring after the period for suit had run could not constitute a basis for either waiver or estoppel. We agree.

The essential elements of estoppel are that " ' "the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . ." ' " (Citations omitted.) *O'Sullivan* v. *Bergenty,* 214 Conn. 641, 648, 573 A.2d 729 (1990). Hanover's change of position in this case, its failure to initiate suit within one year of the fire loss, cannot logically be linked to events occurring after the one year period had run.

We are equally unpersuaded that post one year anniversary communications between the parties support Hanover's claim of waiver. Waiver is the " 'intentional relinquishment of a known right.' " *Olean* v. *Treglia,* 190 Conn. 756, 772, 463 A.2d 242 (1983); *Multiplastics, Inc.* v. *Arch Industries, Inc.,* 166 Conn. 280, 286, 348 A.2d 618 (1974). In the absence of allegation or proof that anyone ever affirmatively stated, on behalf of Fireman's, that it would not invoke the one year suit provision, Hanover has not stated a case for a finding of express waiver. Its argument for an implied waiver rests on the failure of Fireman's to advert to the one year provision when it denied Hanover's demand for payment in 1984. This court, while recognizing the analytic distinction between express waiver

and estoppel, has held that "implied waivers and estoppels by conduct are so similar that they are nearly indistinguishable." *S.H.V.C., Inc.* v. *Roy,* supra, 510; *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 564, 316 A.2d 394 (1972).[7] In light of this equivalence, Hanover's implied waiver claim is as unavailable as was its estoppel claim.[8]

## II

Hanover next maintains that even if the one year suit provision in § 38-98 precludes its suit in subrogation, it can recover from Fireman's on a theory of contribution.[9] The trial court, however, rejected Hanover's claim for contribution on two substantive grounds. Relying on the fact that both the Hanover policy and the Fireman's binder covering the fire loss at Anthony's contained pro rata liability clauses,[10] the court first concluded that each insurer was contractually liable to Anthony's for only one half of Anthony's loss. In these

[7] We recognize that in certain cases, the conduct claimed to give rise to estoppel may be so clear and unequivocal as to support an inference that a party intentionally relinquished its known right to rely on the one year suit provision. The conduct of Fireman's in this case cannot support such an inference.

[8] This case does not require us to decide the effectiveness of an express waiver of the one year suit provision after the time period has run.

[9] The status of Hanover's alleged contribution claim before the trial court is somewhat murky. Hanover's revised complaint, while it clearly asserts a subrogation claim, does not explicitly assert a distinct claim for contribution. Nonetheless, in two trial court memoranda of decision, on the parties' cross motions for summary judgment, and on Hanover's request for an articulation, the merits of Hanover's contribution claim were addressed even though the trial court might well have refused to consider this issue. On this state of the record, we will briefly consider whether the trial court correctly rejected Hanover's contribution claim.

[10] The pro rata liability clause in the oral binder is part of the standard fire insurance form. General Statutes § 38-98. The clause provides: "This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not."

circumstances, the trial court concluded that Hanover was not entitled to contribution because in paying the entire claim when it was liable for only one half thereof, Hanover had acted as a "volunteer." The court also invoked a second basis for rejecting Hanover's claim when it cited *Kaplan* v. *Merberg Wrecking Corporation,* 152 Conn. 405, 412, 207 A.2d 732 (1965), for the proposition that "contribution involves a claim for reimbursement of a share of a payment necessarily made by the claimant which *equitably* should have been paid in part by others." (Emphasis added.) The trial court then concluded that there were "no compelling reasons from the evidence adduced at trial to find contribution in this case." We affirm the trial court's resolution of Hanover's contribution claim on the second ground.

The right of action for contribution, which is equitable in origin, arises when, as between multiple parties jointly bound to pay a sum of money, one party is compelled to pay the entire sum. That party may then assert a right of contribution against the others for their proportionate share of the common obligation. *Kaplan* v. *Merberg Wrecking Corporation,* supra, 412; *Fidelity & Casualty Ins. Co.* v. *Sears, Roebuck & Co.,* 124 Conn. 227, 231–32, 199 A. 93 (1938); *Azzolina* v. *Sons of Italy,* 119 Conn. 681, 692, 179 A. 201 (1935); *Waters* v. *Waters,* 110 Conn. 342, 345, 148 A. 326 (1930); *Bulkeley* v. *House,* 62 Conn. 459, 467, 26 A. 352 (1893).

In the circumstances of this case, we are unpersuaded that the trial court was required to conclude that Hanover had established an equitable basis for a right to contribution. It is not clear, given the pro rata liability clauses in Hanover's policy and Fireman's oral binder, that Hanover could legally have been compelled to pay the fire loss in its entirety, classically a prerequisite to an action for contribution. *Waters* v. *Waters,*

supra. Although the doctrine that denies a "volunteer" a right to contribution has been criticized,[11] we have not had the occasion to confront this issue directly and we need not decide it in this case. To the contrary, the trial court found that Fireman's had reasonably denied the existence of a binder. The facts in this case that shed light on the equities between the parties support the trial court's denial of relief to Hanover.

As an equitable matter, the court might have assigned some weight to Hanover's failure to avail itself of its contribution claim in a timely fashion. Although Hanover argues that its contribution claim did not rest "on the policy,"[12] and was therefore governed, not by

[11] A number of courts have either criticized or refused to apply the "volunteer" doctrine on the ground that it rewards recalcitrant insurers and inhibits the swift settlement of claims. See, e.g., *St. Paul Fire & Marine Ins. Co.* v. *Allstate Ins. Co.*, 25 Ariz. App. 309, 311–12, 543 P.2d 147 (1976); *Smith* v. *Travelers Indemnity Co.*, 32 Cal. App. 3d 1010, 1018–19, 108 Cal. Rptr. 643 (1973); *Michigan Millers Mutual Ins. Co.* v. *United States Fidelity & Guaranty Corporation*, 306 Pa. Super. 88, 91–93, 452 A.2d 16 (1982); see also 8A J. Appleman & J. Appleman, Insurance Law and Practice (Rev. 1988) § 4921, p. 538; 2 G. Richards, Insurance (6th Ed. 1990) § 12:3, pp. 336–37. The volunteer doctrine allegedly fails to recognize that insurers are often called upon to pay claims at times when they have bona fide questions regarding their liability, and the liability of other insurers. As one treatise states, "[w]hen an insurance company pays a claim that is covered by another policy, it does so not as a volunteer, but because, by virtue of its lack of knowledge of or about another policy or the recalcitrance of the other insurer, it feels compelled to treat the claims as its own responsibility." A. Windt, Insurance Claims and Disputes (2d Ed. 1988) § 10.13.

Fireman's counters that, regardless of the vices of the volunteer doctrine, no contribution claim can be maintained in this case because the pro rata clauses negate the joint, or common obligation, element of any contribution claim. 2 G. Richards, supra, p. 336. The authorities are divided on this issue. See, e.g., *Government Employees Ins. Co.* v. *Travelers Ins. Co.*, 63 App. Div. 2d 957, 958, 405 N.Y.S.2d 492 (1978); *Employers Casualty Co.* v. *Transport Ins. Co.*, 444 S.W.2d 606, 607–609 (Tex. 1969); 2 G. Richards, supra; G. Couch, Insurance 2d (Rev. Ed. 1983) § 62:158; 8A J. Appleman & J. Appleman, supra; A. Windt, supra, § 10.01.

[12] See text of General Statutes § 38-98 at footnote 2, supra.

§ 38-98, but rather by General Statutes § 52-581,[13] the statute of limitations for oral contracts, the contrary conclusion is equally possible. By its terms, § 38-98 applies to claims brought in "any court of law or *equity.*" (Emphasis added.) Arguably, then, the section may apply to an equitable contribution claim such as Hanover's. Without deciding that question, however, we note that the policy of swift settlement of claims promoted by the one year suit provision in § 38-98 would be undermined if insurers who failed to bring a timely subrogation claim could simply bypass the one year suit requirement, as Hanover seeks to do, by also alleging an independent contribution claim subject only to a three year statute of limitation. Consequently, the fact that the trial court might have assigned some, perhaps even considerable, weight to Hanover's untimely assertion of its contribution claim would have been entirely appropriate.

Further, as an additional equitable consideration, the court might have taken notice of the relationship between the two insurance policies at issue in this case. The record demonstrates that the insured sought coverage from Fireman's to replace, rather than to supplement, the fire insurance for which it had received a notice of cancellation from Hanover, effective February 7, 1983.[14] It was therefore entirely fortuitous and

---

[13] General Statutes § 52-581 provides in relevant part: "(a) No action founded upon any express contract or agreement which is not reduced to writing, or of which some note or memorandum is not made in writing and signed by the party to be charged therewith or his agent, shall be brought but within three years after the right of action accrues."

Assuming the applicability of § 52-581, Hanover's claim for contribution did not accrue, and the statute of limitation therefore did not begin to run, until Hanover made final payment to Anthony's. *Waters* v. *Waters,* 110 Conn. 342, 346, 148 A. 326 (1930).

[14] At trial, Minogue's agent testified that, in seeking coverage for Anthony's from Fireman's, he had never intended to create duplicate coverage.

unanticipated that, because the oral binder was issued on January 31, 1983, both the old and the new insurance were in effect on February 3, 1983, the date of the fire at Anthony's. But for this fortuitous overlap, Hanover would have remained liable for the entire fire loss at Anthony's. In these circumstances, the trial court could reasonably have concluded that Hanover's payment was not one "which equitably should have been paid in part" by Fireman's. *Kaplan* v. *Merberg Wrecking Corporation,* supra, 412.[15]

The judgment is affirmed.

In this opinion, CALLAHAN, COVELLO and BORDEN, Js., concurred.

SHEA, J., dissenting. I agree with Part I of the majority opinion, rejecting Hanover's subrogation claim for failure to bring suit within one year after the loss in accordance with the standard policy provision implicitly contained in Fireman's binder agreement by virtue of General Statutes 38-98.[1] I disagree, however, with the grounds upon which the majority in Part II relies to affirm the denial of Hanover's claim of contribution, which the trial court considered despite the failure to plead it.

The majority eschews reliance upon the only ground specifically articulated in the memorandum of decision for denying the contribution claim: "The plaintiff acted as a volunteer when it made full payments to [Anthony's], the insured." Because I disagree with the

---

[15] We note that the failure of Hanover's contribution claim in this case would not have been fatal to its quest for reimbursement had it brought its subrogation claim in a timely fashion. See, e.g., *Employers Casualty Co.* v. *Transport Ins. Co.,* 444 S.W.2d 606, 610 (Tex. 1969) (subrogation claim available as remedy even if contribution claim unavailable).

[1] See footnote 2 of the majority opinion.

grounds advanced by the majority to support the judgment, I must express my agreement with the more recent cases and commentators[2] that have rejected the application of the volunteer doctrine in a situation like this one in which the insurer seeking contribution has no basis for contesting its own coverage of the entire loss except that the pro rata clause in its policy may obligate it to pay only a portion thereof if a dispute over duplicate coverage by another insurer is ultimately resolved by a finding of such coverage, as in this case. Adherence to the volunteer doctrine in such circumstances would encourage insurance companies to withhold payments until disputes involving other insurance were resolved in court. It would often compel the insured to bring suit for breach of contract against both insurers when one of them would have paid the entire loss but for concern over preserving its claim for contribution. As one commentator has indicated, the application of the volunteer doctrine in the pro rata clause context stems from "[a] failure to perceive clearly that contribution is based on unjust enrichment."[3] G. Palmer, Law of Restitution (1978) § 1.5 (d).

---

[2] See footnote 11 of the majority opinion; see also A. Windt, Insurance Claims and Disputes (2d Ed. 1988) § 10.16; G. Palmer, Law of Restitution (1978) § 1.5 (d).

[3] "A failure to perceive clearly that contribution is based on unjust enrichment leads, on occasion, to undesirable decisions. An example is provided by cases in which policies of two insurers cover the same loss, with each policy containing a pro rata clause. The effect of such a clause is that the liability of each insurer is limited to his portion of the total coverage. If one insurer pays more than his share, some courts have denied contribution, even though the payment was made in such circumstances that in other contexts restitution would be granted because of the benefit conferred on the other insurer. Thus, in one case the entire loss was paid by an insurer who was unware of the fact that the insured carried other insurance. In general terms, one person has paid the obligation of another in the mistaken belief that he is paying his own obligation. The right to restitution is clear and in other settings is nearly always recognized. But in the case in question, contribution was refused; such relief is available, the court said, only when the payor discharges a 'common burden, obligation or liability.' " G. Palmer, Law of Restitution (1978) § 1.5 (d).

The majority appears to construe the supplemental memorandum of decision responding to the motion for articulation of the reasons for denying contribution as basing that determination on alternative grounds independent of the volunteer doctrine, which the trial court relied on expressly. The inclusion in the memorandum of a quotation defining contribution as involving "a claim for reimbursement of a share of a payment *necessarily made by the claimant* which equitably should have been [made] by others"; (emphasis added) *Kaplan v. Merberg Wrecking Corporation,* 152 Conn. 405, 412, 207 A.2d 732 (1965); indicates explicitly that the court relied on the volunteer doctrine, but sheds no light upon whether any other equitable considerations entered into the decision. Similarly, the general statement that "[t]he [trial] court finds no compelling reasons from the evidence adduced at trial to find contribution in this case" hardly suggests that any of the alternative grounds relied on by the majority as possible bases for the decision were ever considered by the trial court.

The majority declares that "[t]he facts in this case that shed light on the equities between the parties support the trial court's denial of relief to Hanover" and proceeds to speculate that the court "might have assigned some weight" to two factors: (1) the failure to bring suit within one year after the loss as required by the standard policy clause incorporated into the binder agreement by § 38-98; and (2) the "entirely fortuitous and unanticipated" circumstance that both the old and the new insurance coverage were in effect at the time of the loss. The majority does not indicate that either or both of these possible grounds for the decision would have necessitated as a matter of law the denial of contribution, but only that the trial court was not "required to conclude that Hanover had established an equitable basis for a right to contribution."

Before addressing the merits of the two grounds advanced by the majority, I must object to the speculation in which it has indulged by assuming that the trial court ever considered either of them as a basis for the decision or weighed them against an otherwise viable contribution claim. The vague allusions to equity in the memorandum of decision may readily be viewed as relating to the validity of the contribution claim simply on the basis of the volunteer doctrine, which has generally been regarded as an equitable principle. Appellate review of a trial court decision should not be conducted in the same manner as when a jury verdict is challenged for lack of evidence, necessitating a search of the record for any conceivable basis to support the jury finding. Practice Book § 4059, by requiring in nonjury trials that the court "state its decision on the issues in the case," including "its conclusion as to each claim of law raised by the parties," contemplates that appellate review will be conducted on the basis of the grounds actually relied upon by the trial court. Only when a ground not considered by the court would determine the outcome of an appeal as a matter of law should an appellate court rest its judgment thereon, a circumstance the majority does not claim to exist in this case. Instead of speculating that the court in this case *might* have relied upon matters not specified in the memorandum, we should exercise our authority pursuant to Practice Book § 4061 to order a further articulation by the trial court of the grounds it relied upon apart from the volunteer doctrine.

With respect to the merits of the first proposition advanced by the majority, that § 38-98, the one year limitation established as a term of the insurance binder, "arguably" may apply to Hanover's equitable contribution claim just as it applies to its subrogation claim, I must express my disagreement. The majority overlooks the classic distinction between an action on the

contract, such as subrogation, which § 38-98 unquestionably governs, and an action for contribution, which is based on the equitable principle of unjust enrichment. The statute does not purport to apply to anything but the terms of the insurance contract. Equitable claims of contribution or indemnification, which do not arise until payment to the insured has been made, should not be governed by a provision limiting the period for suit to one year from the date of the *loss*. Even if § 38-98 were to be given some force by analogy in determining the time reasonably to be allowed for seeking contribution, it would be necessary to weigh all of the factors involved, including Fireman's dilatory tactics in failing to respond promptly to Hanover's inquiry about the binder, before deciding whether the delay here was unreasonable. We should not speculate that the trial court found laches when there is no mention of that subject in the memorandum of decision.

As for the "additional equitable consideration" that the trial court "might have taken notice of," that the overlap in coverages was fortuitous, I see no basis for viewing it as a justification for denying Hanover's claim. Fireman's was entitled to charge a premium from the date of the oral binder and was no less bound than Hanover to pay the loss when it occurred on February 3, 1983, as the trial court determined. In any event, there is nothing in the memorandum of decision to indicate that the trial court ever considered this second ground speculatively attributed to it by the majority or weighed it against the equities involved in Hanover's contribution claim. This court cannot perform functions that are plainly those of the trial court.

Accordingly, I dissent.