PETER D. SCRIVANI AND MARY J. SCRIVANI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Scrivani v. Commissioner
Docket No. 28649-90
United States Tax Court
T.C. Memo 1992-467; 1992 Tax Ct. Memo LEXIS 486; 64 T.C.M. (CCH) 523; August 18, 1992, Filed *486 Decision will be entered for respondent. For Petitioners: David R. Biondi. For Respondent: Meryl Silver, Carmino J. Santaniello, Jr., and Powell W. Holly, Jr.
KORNER
KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: By statutory notice of deficiency dated September 27, 1990, respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax
Year
Deficiencies
Sec. 6651(a)(1) [1]
Sec. 6653(a)
1979
$ 6,020
$ 966
$ 1,225
1980
11,815
2,907
1,627
The primary issue for decision is whether petitioners suffered a loss arising from theft, or alternatively a business bad debt, in 1979, stemming from amounts allegedly loaned or certain debts guaranteed by petitioners. We must also decide whether respondent erred in determining that petitioners were liable for additions to tax under sections 6651(a)(1) and 6653(a). FINDINGS OF FACT Some of the facts are stipulated and are so found. The stipulations *487 of fact and attached exhibits are incorporated herein by this reference. Petitioners resided in Easton, Connecticut, at the time they filed their petition in this case. Petitioners are cash basis taxpayers, and filed their joint Federal income tax returns for 1979 and 1980 on December 27, 1985. The terms "petitioner" and "Scrivani" shall refer to petitioner husband Peter D. Scrivani. During the years at issue, petitioner owned and operated as a sole proprietorship Allied Industrial Building Company (AIBC), which was engaged in the business of leasing commercial space in a 110,000-square-foot building which petitioner had acquired in 1973. Scrivani also owned Allied Elevator Construction Company; was employed by Allied Elevator Service Company, which petitioner had incorporated in 1965; and received management fees from Allied Elevator Companies. Some of these businesses shared office space in AIBC's building. Petitioner also had an interest in Computer Peripheral Corporation (CPC). CPC was incorporated under the laws of the State of Connecticut on February 1, 1976. CPC was in the business of selling computers and related equipment. During the years at issue, the owners of *488 CPC and their respective stock interests were as follows: Shareholder
Percentage of Stock
Joseph Sorrentino [2]
50%
Petitioner
48%
Leonard S. Paoletta
2%
Sorrentino was CPC's president and allegedly was in charge of CPC's sales and marketing. In November 1978, Sorrentino's authority to secure extensions of credit was withdrawn by CPC's other shareholders. Scrivani was CPC's vice president and allegedly handled all other aspects of CPC's business, including meeting with Sorrentino on a daily basis to discuss CPC's sales. CPC never paid him any compensation. CPC shared office space with petitioner's other businesses, located in AIBC's building and leased warehouse space in Norwalk, Connecticut. CPC reported losses on its 1976 and 1977 corporate income tax returns. CPC did not file tax returns for 1978, 1979, and 1980. CPC's unaudited balance sheet as of August 31, 1978, listed capital stock in the amount of $ 5,000 and did not reflect any loans from shareholders. CPC ceased doing business in 1979, but has not been legally dissolved. On December 26, 1975, Sorrentino, as president of CPC, executed a security *489 agreement in favor of Citytrust, formerly known as the City National Bank of Connecticut. In that agreement, Citytrust was granted a continuing security interest in CPC's accounts receivable, contract rights, and inventory. On March 12, 1976, petitioners, Sorrentino, and his wife, Linda Sorrentino, executed a guarantee in favor of Citytrust for all obligations incurred by CPC to that bank in an amount not to exceed $ 50,000. On February 15, 1980, Citytrust assigned to petitioner all of its right in the March 12, 1976, guarantee and December 26, 1975, security agreement, for a stated consideration of $ 50,000. On or about March 22, 1980, Scrivani commenced legal proceedings against the Sorrentinos for payment of their share of the $ 50,000 Citytrust obligation. On May 23, 1980, Sorrentino was granted a prejudgment remedy in the amount of $ 50,000 against real property owned by Linda Sorrentino located in Easton, Connecticut. On July 16, 1982, a judgment was entered against the Sorrentinos in the action brought by Scrivani. On or about July 13, 1978, Scrivani was indebted to Citytrust for personal loans in the amount of $ 141,433. [3] On March 11, 1980, these loans were consolidated *490 into one note in the amount of $ 211,079.11. Petitioners did not make any payments of principal under the Citytrust guarantee or security agreement during 1979 or 1980. By written agreement dated April 1, 1978, CPC entered into a 60-month lease of a computer and related equipment with Inleasing Corporation of Providence, Rhode Island, commencing April 25, 1978, at a monthly rate of $ 3,669.72. The Sorrentinos and petitioners through separate agreements guaranteed CPC's performance under this lease. Inleasing bought the computer which was the subject of the lease from G & L Computers (G & L), whose chairman was Sorrentino, for $ 163,019 and paid for it by check dated April 7, 1978. The check was ultimately deposited into an account Sorrentino shared with AIBC. The computer was delivered on or about April 25, 1978, to CPC. CPC defaulted on the lease in *491 December 1978. On January 3, 1979, Inleasing notified CPC, Sorrentino, and Scrivani that CPC had defaulted on the lease and demanded immediate payment of all rents due under its terms. On January 18, 1982, Scrivani entered into a satisfaction of judgment with Inleasing and Industrial National Bank of Rhode Island, in which Inleasing agreed to accept $ 102,977.27, and the bank $ 122,022.73 covering in part Scrivani's obligation arising under the guarantee dated April 4, 1978. During 1979 and 1980, Scrivani did not make any payments of principal to Inleasing or its successors in interest under either the guarantee or judgment. On August 26, 1982, Scrivani obtained a judgment against Sorrentino for $ 51,488.63, his share of the liability under the Inleasing guarantee dated April 1, 1978. On August 25, 1978, petitioners and Sorrentino executed a continuing letter of obligation in favor of State National Bank of Connecticut (SNB) for all obligations incurred by CPC in an amount not to exceed $ 300,000. On September 9, 1981, SNB obtained a judgment against CPC and the Sorrentinos in the amount of $ 254,532.64. On October 20, 1981, a judgment lien was placed on certain real property *492 owned by the Sorrentinos to secure the SNB judgment. On October 20, 1981, petitioners and SNB executed a stipulation of judgment, in which petitioners agreed to a judgment in the amount of $ 170,000 payable in installments. On October 20, 1981, SNB assigned its judgment against the Sorrentinos to petitioners. Petitioner made no payment of principal to SNB under either the guarantee or the stipulation of judgment during 1979 and 1980. In 1978, 27 checks drawn on Scrivani's business account that he shared with AIBC, amounting to $ 170,710.63, were issued payable to CPC and others (allegedly on behalf of CPC). Most of these checks were executed either by Scrivani or by an employee so authorized. Part of the funds transferred were used to make the computer rental payments under the agreement with Inleasing. Some of the checks were issued at least in part for payment on personal loans taken out by Scrivani. The principal source of funds for these checks was the check issued by Inleasing to G & L and deposited into the account Scrivani shared with AIBC. CPC did not make any payments to Scrivani in connection with these transfers to or allegedly on behalf of CPC. Petitioners claimed *493 nonbusiness bad debts arising out of their involvement with CPC in the amounts of $ 22,578 and $ 25,564, and short-term capital loss carryovers from 1978 and 1979 in the amounts of $ 26,994 and $ 34,703, on their 1979 and 1980 income tax returns, respectively. Respondent disallowed these deductions and determined that petitioners were liable for additions to tax under sections 6651(a)(1) and 6653(a) for the years at issue. OPINION Issue 1: Deductions Arising from Theft or Bad Debt
The primary issue in this case is whether petitioners were entitled to any deductions arising from petitioner's alleged loans to CPC or petitioners' guarantees of CPC debt in 1979. Petitioners claim that respondent erred in denying their claimed nonbusiness bad debt deductions; and they assert that they were entitled to a deduction of $ 722,419 arising from losses from theft or business bad debt in 1979. [4]
*494 Before proceeding into an analysis of the merits of petitioners' arguments, we note that in general their case is underdeveloped. This treatment left unclear what actually transpired and has cast doubt on the credibility of the testimony of their witnesses. In the circumstances of the instant case, these shortcomings could have been cured through additional testimony or the production of documents that we believe should have been in petitioners' possession, or by offering explanations as to why such documents were unavailable. See Tokarski v. Commissioner, 87 T.C. 74 (1986); Archer v. Commissioner, 227 F.2d 270 (5th Cir. 1955), affg. a Memorandum Opinion of this Court dated Feb. 18, 1954; Leong v. Commissioner, T.C. Memo. 1977-19, affd. without published opinion 573 F.2d 1291 (2d Cir. 1977) (in evaluating the credibility of witnesses "we need not accept their testimony as gospel, even though it is not controverted; we are entitled to take into account whether it is improbable, unreasonable, or questionable"); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. *495 162 F.2d 513 (10th Cir. 1947). A. Theft Loss
Petitioners' main argument is that events in 1979 entitled them to a theft-loss deduction to the extent of the alleged advances to CPC and their guarantees of CPC's debts. See sec. 165(a), (c). A taxpayer is entitled to deduct a theft loss in the taxable year in which the taxpayer discovers such loss. Sec. 165(e). Petitioners have the burden of proving a theft loss. Rule 142(a). To establish a theft loss, the taxpayer must show that the loss was the result of a transaction which, under the law of the state in which the transaction occurred, constitutes a theft. Paine v. Commissioner, 63 T.C. 736, 740 (1975), affd. without published opinion 523 F.2d 1053 (5th Cir. 1975); Monteleone v. Commissioner, 34 T.C. 688, 694 (1960); Allen v. Commissioner, 16 T.C. 163, 166 (1951). Petitioners assert that Sorrentino embezzled or defrauded them of the amounts they now claim to have lost in CPC. Larceny in Connecticut includes: (2) Obtaining property by false pretenses. A person obtains property by false pretenses when, by any false token, pretense *496 or device, he obtains from another any property, with intent to defraud him or any other person. [Conn. Gen. Stat. Ann. sec. 53a-119 (West 1985).] Petitioners have failed to show that Sorrentino obtained the advances or guarantees through theft. Although petitioners elicited testimony that indicated that Sorrentino's actions at CPC were dubious, the evidence taken as a whole does not reveal any criminal conduct. An employee of Allied Elevator Companies testified as to conversations regarding CPC's sales between Scrivani and Sorrentino to which he was privy. He thought Sorrentino exaggerated the level of CPC's sales. Another witness, Allied Elevators Services' controller from May 1978 to October 1978, testified that Scrivani had asked him to set up CPC's books. He concluded within 2 months of working for petitioner that Sorrentino was misleading Scrivani by claiming CPC had made sales when they in fact did not exist, and that "anything * * * [Sorrentino] said was probably a lie." He emphatically relayed his opinion regarding Sorrentino and CPC's bookkeeping to Scrivani. Petitioner testified that in April 1979, he discovered by accident that a warehouse CPC was leasing in Norwalk, *497 Connecticut, contained only empty boxes which he had been led to believe by Sorrentino contained CPC's inventory of computer terminals. Based upon this and similar testimony, petitioners conclude that Sorrentino had misled petitioners regarding CPC sales and inventory and, thus, into advancing CPC funds and guaranteeing CPC debt. This, they conclude, constitutes theft. However, the record reveals other circumstances that present a different version of CPC's corporate history. We note that despite the controller's vociferous warning regarding Sorrentino's actions, petitioners executed a guarantee covering up to $ 300,000 in CPC borrowings from SNB at the end of August 1978. We find it incredible that, despite these warnings and petitioner's involvement in numerous businesses, petitioner would have exposed himself to further risk of loss with his investment in CPC without confirming Sorrentino's claims. Moreover, despite testimony that the sales reported by Sorrentino were nonexistent, one witness testified that at least some of the sales materialized while others fell through. The record also contains evidence that in January 1979 CPC apparently had accounts receivable of $ *498 102,000. Lastly, the record also establishes that in November 1978 Scrivani and Leonard Paoletta had revoked Sorrentino's authority to extend CPC's credit, that Scrivani had taken over the business, and that in December CPC had defaulted on the Inleasing lease. In such circumstances, we wonder why it took petitioner so long to apprise himself of CPC's inventory. The testimony offered by petitioner, considered in light of the record, fails to support a finding that a theft had occurred. Other factors, also, weigh against petitioners' claim of theft. First, Scrivani never filed a police report regarding Sorrentino's alleged theft. See Anderson v. Commissioner, T.C. Memo. 1984-671. Second, despite waiting until 1985 to file their returns for the years at issue, the deductions petitioners reported, which only constituted a fraction of the amount they now claim they are entitled to, arising out of petitioner's investment in CPC, were claimed as nonbusiness bad debt and not as losses arising from theft. [5] See Brown v. Commissioner, T.C. Memo. 1971-60. The crux of the matter is that petitioners failed to offer proof that reasonably leads to *499 the conclusion that Sorrentino committed theft. We believe that the record establishes at most that petitioner made a bad investment, and consequently, we hold that petitioners are not entitled to a theft loss arising from the guarantees or alleged loans. [6]Allen v. Commissioner, 16 T.C. 163, 166 (1951). Even assuming, arguendo, that the transactions undertaken by Sorrentino would be classified as theft for purposes of section 165, [7] petitioners must show that in the year of discovery there existed no claim with respect to which there is a "reasonable prospect of recovery" as to the loss suffered by theft. Sec. 1.165-1(d)(3), Income Tax Regs.; see Ramsay Scarlett & Co. v. Commissioner, 61 T.C. 795 (1974), *500 affd. 521 F.2d 786 (4th Cir. 1975). The standard for making this determination is an objective one. Ramsay Scarlett & Co. v. Commissioner, supra at 811. There was no showing that petitioner had a bona fide claim against Sorrentino with no reasonable prospect of recovery. See Florman v. Commissioner, T.C. Memo. 1979-254. Furthermore, with respect to the guarantees, petitioners were entitled to recover from the Sorrentinos upon paying the respective creditor under the equitable principle of contribution. See Hanover Insurance Co. v. Fireman's Fund Insurance Co., 586 A.2d 567 (Conn. 1991). However, they failed to show there was no reasonable prospect of recovery of any amount from them. In this regard, we note that the record reveals that Scrivani attached property owned by Linda Sorrentino in 1980 arising from the Citytrust guarantee. *501 In addition to the aforementioned barriers to petitioner's claim of theft loss, petitioners face another hurdle with respect to taking such a deduction based on their guarantees of CPC's debts. Petitioners would not be entitled to a deduction until they sustained a loss, which would not arise until they made payment on the guarantees. Burnet v. Huff, 288 U.S. 156 (1933) (losses must be actual and present to be deductible); Leedy-Glover Realty & Insurance Co. v. Commissioner, 13 T.C. 95 (1949), affd. 184 F.2d 833 (5th Cir. 1950); cf. sec. 1.166-9(b), Income Tax Regs.
In the instant case, petitioners offered the testimony of their accountant that the amount of the nonbusiness bad debt that petitioners reported on their 1979 and 1980 returns represented interest paid on the guarantees. Petitioners produced no documentary evidence to substantiate this testimony, nor did they offer any explanation why such evidence was unavailable. We are not persuaded that petitioners paid any amount associated with their guarantees of CPC debt in 1979 or 1980. See Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. *502 540 F.2d 821 (5th Cir. 1976). Based on the record and for the preceding reasons, petitioners are not entitled to a deduction for losses arising from theft for 1979 or 1980. B. Business Bad Debt
A taxpayer is entitled to report as an ordinary loss any business bad debt to the extent of its worthlessness during the taxable year. Sec. 166(a). Petitioners have the burden to establish, inter alia, the following: (1) The existence of a bona fide debt; (2) the amount of the debt; (3) that the debt was incurred in or was either created or acquired in connection with the taxpayer's trade or businesses; and (4) that the debt became worthless at least in part during the taxable year. Rule 142(a); secs. 166(a), (d)(2); secs. 1.166-1(a), (c), 1.166-5(a)(2), Income Tax Regs.
Petitioners claim that in 1978 Scrivani's advances to CPC constituted a business loan. Petitioners produced copies of 27 checks drawn on a joint account held by Scrivani and AIBC and amounting to $ 170,711.02. [8] They claim that these checks were issued to or on behalf of CPC. Petitioners do not assert that the total amount allegedly transferred to and paid on behalf of CPC constituted the debt *503 in issue, but only the excess of the aforementioned transfers to CPC over the G & L check deposited into petitioner's and AIBC's account. Petitioners, however, have failed to establish that this excess constituted a bona fide loan. In most cases dealing with the issue of a bona fide loan, the shareholder has cast his transfer of funds in the form of a debt obligation and the concern is that the debt is in substance a capital investment. See Fin Hay Realty Co. v. United States, 398 F.2d 694 (3d Cir. 1968); Georgia-Pacific Corp. v. Commissioner, 63 T.C. 790 (1975). However, in this case we do not even reach that issue, since petitioners did *504 not establish that there was any formal obligation on the part of CPC to repay any amounts advanced by Scrivani. Instead, petitioners apparently claim that such an obligation was implicit in petitioner's direct and indirect advances to CPC. We disagree. Petitioners provided no indicia of debt such as the terms of the alleged loan or a recognizable debt instrument. Further, CPC's unaudited balance sheet as of August 1978 did not reflect any shareholder loans, nor for that matter did it reveal that the advances constituted a capital contribution. Based on the record, we are not persuaded that Scrivani had a genuine intention to create debt with respect to the amounts allegedly advanced to CPC. Petitioners have also failed to show the amount of the alleged debt owed by CPC to petitioner. Petitioners entered into evidence copies of checks issued to CPC and others in 1978, drawn on Scrivani's joint account with AIBC. Petitioners claimed that the payments to others were payments on behalf of CPC. However, respondent established that certain of these checks represented payments at least in part on Scrivani's personal loans. Although the record also indicates that Scrivani transferred *505 funds by check directly to CPC in 1978, we are not persuaded -- given the inconsistency between his testimony and the nature of some of the payments; the lack of any loan documentation; and the failure of CPC's balance sheet to account for these alleged loans -- that CPC received from petitioner any amount over the funds petitioner received from G & L. Petitioners did not show that there was a sufficient relationship between the alleged indebtedness and petitioner's trade or business. A business bad debt deduction arises only where the debt is proximately related to the taxpayer's trade or business. Sec. 1.166-5(b), Income Tax Regs. This issue is one of fact and the burden of proof is upon petitioners. Rule 142(a); Putoma Corp. v. Commissioner, 66 T.C. 652, 673 (1976), affd. 601 F.2d 734 (5th Cir. 1979). Petitioners claim that Scrivani extended the alleged loan to protect his employment with CPC. Although testimony was elicited that petitioner acted as CPC's vice president, the record indicates that petitioner, who was involved in several other businesses and investments, was only passively engaged in CPC's operation and never received any *506 compensation. Furthermore, he reported his losses attributable to CPC on petitioners' 1979 and 1980 income tax returns as nonbusiness bad debts, which indicates that petitioner viewed his financial assistance to CPC as being that of an investor. Millsap v. Commissioner, 46 T.C. 751 (1966), affd. 387 F.2d 420 (8th Cir. 1968). Based on the record, we are not persuaded that petitioner's dominant motivation in the alleged advancing of funds to CPC was to protect his employment as an officer of CPC. See United States v. Generes, 405 U.S. 93, 103 (1972); Putoma Corp. v. Commissioner, supra at 674 (assertions of subjective intent are not determinative; rather, the existence of a dominant motive is to be determined by an objective examination of the record). Petitioners in the alternative claim that Scrivani was in the business of lending money to his prospective tenants to induce them to lease space from AIBC. We are not so persuaded. Although Scrivani testified to this effect, petitioners offered no evidence to establish that CPC ever leased property or space owned by Scrivani. Furthermore, petitioners' *507 returns for 1979 and 1980 did not reflect that petitioners derived any income arising out of loans made by Scrivani to others or to CPC. With respect to petitioners' guarantees of various CPC debts, petitioners have failed to show that they made payment on the guarantees in either of the years at issue. A taxpayer who sustains a loss as a result of a guarantee obligation is entitled to report the loss as if it arose from a loan made directly. However, "a payment of principal or interest made during a taxable year * * * by the taxpayer in discharge of part or all of the taxpayer's obligation as a guarantor * * * is treated as a business debt becoming worthless in the taxable year in which the payment is made". Sec. 1.166-9(a), Income Tax Regs.
Petitioners failed to establish that any payments were made under their guarantees during the years in issue. Although petitioners' accountant, who prepared the 1979 and 1980 returns, testified that the amounts, reported as nonbusiness bad debts for the years at issue, represented payments of interest on CPC indebtedness, the record lacks the specificity necessary to substantiate, through documents that would have been in petitioner's hands, *508 that interest payments on CPC's debt had been made by petitioner in the years at issue. [9] See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. at 1165. Issue 2: Additions to Tax
Respondent determined that petitioners were liable for an addition to tax pursuant to section 6651(a)(1). Under this provision, if a taxpayer fails to file a Federal income tax return within the prescribed period of time, an addition to tax up to a maximum amount of 25 percent of the tax required to be shown on the return may be imposed, unless such failure to file is "due to reasonable cause and not due to willful neglect". Sec. 6651(a)(1). Petitioners bear the burden of proof on this issue. Rule 142(a). Petitioners' *509 joint income tax returns for 1979 and 1980 were due on or before April 15, 1980, and April 15, 1981, respectively. Sec. 6072(a). The returns for these years were not filed until December 27, 1985. No explanation has been offered by petitioners for their failure to timely file these returns. We, therefore, sustain respondent's determination. Respondent also determined that petitioners were liable for an addition to tax due to negligence under section 6653(a) for both of the years at issue. Negligence is defined as the lack of due care or failure to do what a reasonably prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 937 (1985). Petitioners have the burden to prove that respondent's determination of this addition to tax was erroneous. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Petitioners introduced no evidence showing that they were not negligent nor did they brief this issue. Furthermore, petitioners did not produce sufficient records to establish their entitlement to the losses they claimed on their returns. See Zivnuska v. Commissioner, 33 T.C. 226, 239-241 (1959). *510 No objective evidence was introduced into the record that indicated the amount petitioners allegedly paid on their guarantees in 1979 and 1980, and no explanation was provided as to why such evidence was unavailable. Based on the record, we are not persuaded that respondent's determination of this addition to tax was erroneous. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. All statutory references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. Joseph Sorrentino shall be referred to as Sorrentino.↩
3. The record is unclear whether these loans were obtained for Allied Elevator Companies, but this Opinion will treat them as the personal loans of petitioner.↩
4. Petitioners asserted in their petition that they were entitled in 1979 to a theft loss or, in the alternative, a business bad debt deduction in the amount of $ 851,489. On brief, however, petitioners reduced the amount they claimed to $ 722,419. In arriving at this amount, they admit that they suffered no loss as a result of theft or bad debt to the extent that funds they transferred to CPC were derived from the $ 163,019 check petitioner received from G & L and deposited into the account he held jointly with AIBC. Their claimed loss includes $ 65,925 attributable to the default by CPC of an obligation it allegedly had to the Bank of Trumbull. Unlike CPC's obligations to other entities, the record does not contain any agreements obligating CPC or petitioners to pay this institution the amount asserted. Although short-term capital losses were claimed for 1979 and 1980 in petitioners' returns, together with further capital-loss carryovers resulting from other events in 1978 and 1979, and were repeated in the petition, this position was not mentioned on brief, and is deemed to be abandoned.↩
5. This fact also makes it difficult for petitioners to maintain that they discovered the theft in 1979. Sec. 165(e)↩.
6. We are also not persuaded on this record that, assuming Sorrentino's acts constituted theft, petitioners sustained the theft loss instead of CPC. Silverman v. Commissioner, T.C. Memo. 1975-256↩.
7. We note that the regulations under sec. 166 provide the exclusive treatment for the allowance of deductions attributable to payments made pursuant to a guarantee. Sec. 1.166-9, Income Tax Regs.↩ Giving petitioners the "benefit of a doubt", we assume without holding, in this portion of the Opinion dealing with theft loss, that the liabilities which petitioners incurred were not the result of guarantees covered by these regulations.
8. The only checks introduced into evidence regarding any advances were the 27 checks totaling $ 170,711.02. Petitioners on brief asserted that $ 179,808 had been paid to or on behalf of CPC by Scrivani. We find absolutely no support for this larger amount in the record and conclude that Scrivani advanced no more than $ 170,711.02 to CPC.↩
9. Moreover, petitioners failed to establish that their guarantees of CPC debts were proximately related to their trade or business, and to show the extent to which their right of subrogation or right to contribution was worthless. See secs. 166(a); sec. 1.166-5(b)↩; 1.166-9(e)(2), Income Tax Regs.