[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
The defendants owned premises on which the plaintiff fell. The first complaint was dismissed by the court under the dormancy program pursuant to P. B. § 14-3. A Motion to Set Aside and Open a Judgment of Nonsuit was denied and the present action was filed December 22, 1997, almost four years after the alleged fall.
The defendants have now filed a motion for summary judgment claiming the first count is barred by the statute of limitations and that the second count in breach of contract should be dismissed because the lease provision at issue cannot be read to impose contractual obligations on the defendants.
 1.
The defendants raised the defense of the statute of limitations as a special defense. The plaintiff raised the accidental failure to sue statute, § 52-592 (a), only in reply to the defendants' claim that the action was barred because not brought within two years from the date of injury, (§52-584 of general statutes).
The defendants claim that the first count should be dismissed because of failure to comply with P.B. § 10-3(a) which states that "when any claim made in a complaint . . . is grounded on a statute, the statute shall be specifically identified by its number." The practice book section does not say what consequences should flow from failure to comply with this practice book section. Cases have held that the requirements of P.B. § 10-3
CT Page 2122 are directory not mandatory, Rowe v. Godou, 209 Conn. 273, 275
(1988), Hanover Insurance Co. v. Fireman's Fund Ins. Co.,217 Conn. 340, 345 (1991). What this should mean is that depending on the stage of litigation harmful consequences should be visited on a litigant for failure to comply with the practice book requirement if prejudice is thereby caused to the other side. That is exactly what Rowe and Hanover suggest since the court reasoned that in the cases before it the complaint and memorandum of law attached to it gave enough I notice to alert opposing counsel of the complaint/defense involved in those cases. Here, the reply gave adequate notice of the § 52-592 (a) response to the limitations defense. There can be no prejudice shown here based on the fact that the ameliorative statute was not referenced in the complaint since it did not become germane until a limitations defense was raised. That is the very point of RossRealty Co. v. Surkis, 163 Conn. 388, 392 (1972) which i indicates that § 52-592 (a) need not be referenced in the complaint, can be referred to in the reply to a special defense — in fact either of these steps would be the preferable practice — but the statute need not be referred to in either pleading. Here the plaintiff has in fact referred to the statute in its reply to the defendants' special defense.
In fact, the practice book language tracks the reasoning ofRoss. The point here is that it cannot be said that "any claim" made here is "grounded" on § 52-592 (a). That statute is not a part of the plaintiff's cause of action which are the operative facts that allegedly caused her injury. In other words, the statute of limitations could have been waived or not raised by these defendants through choice or error — if that had been the case, the action would have gone forward, so how can it be said that the claim here is "grounded" in an ameliorative statute which merely allows a claim to go forward if a certain defense to that claim is raised?
Or to approach the problem from a different perspective, the defendants have styled their motion as one for summary judgment — that is fine but the issue they raise could have been advanced in a motion to strike because it goes to the legal sufficiency of the complaint. Merely because this motion is entitled one for summary judgment, the practical result of what should happen in the case should not change. If a motion to strike had been used and the court agreed with the defendants' position, the plaintiff would have been allowed to plead over and specifically reference § 52-592 (a). A statute of limitations CT Page 2123 objection to the pleading over would have been of little weight given the ameliorative purposes of the latter statute. Also by analogy to the liberal relation back doctrine concerning amendments to the complaint — how could it be argued that any lawyer receiving a copy of the second complaint, despite the fact that it did not specifically reference § 52-592 (a)g, would not have had fair notice that the accidental failure of suit statute might and would come into play in this litigation? Notice is what the limitation statutes seek to ensure. The motion for summary judgment is denied as to the first count.
 2.
The defendants also argue that the second count based on a breach of contract claim should be dismissed. The lease provision in issue states that the defendant lessors are obligated to "keep all common areas of the building in a clean, safe condition." The defendants argue that the fall here did not occur in the building but in an area outside the building. Clearly, according to the defendants, they were not obligated to maintain common areas outside the building itself. Ordinarily contract interpretation is a question for the jury but where there is definitive contract language, the determination of what the parties intended by their contract language is an issue of law, Gurliacci v. Mayer,218 Conn. 531, 567 (1991), Thompson Peck, Inc. v. Harbor MarineContracting Corp., 203 Conn. 123, 131 (1987).
The court does not agree with the defendant's position. For one thing, there is a question of fact presented by the contract language used. The lease provision says "common areas of the building" — it does not say common areas "in" the building. How does one get from the outside of the building in to the building — presumably one crosses over common areas. If so, then it should be for the jury to decide if the common areas referenced in the lease are "of" the building in the sense that they could be outside it, as opposed to a construction of the contract language to the effect that such areas actually must be in the building.
Furthermore, it is general law that where a contract or contract provision is fairly open to two constructions, that construction will be given which is not violative of the law, see 17 A Am. Jur.2d "Contracts", § 346 pp 346 et seq., ofBassett v. Desmond, 140 Conn. 426, 431 (1953), RFC v. UnitedDistillers Products Corp., 113 F. Sup. 468 (D.Conn). CT Page 2124
Section 47a-7 of the general statutes says at (a)(3) that a landlord "shall . . . keep all common areas of the premises in a clean and safe condition". Section 47a-1 (g) defines premises as "a dwelling unit and the structure which it is a part and facilities and appurtenances therein and grounds areas, and facilities held out for the use of tenants generally or whose use is promised to the tenant." Section 47a-4 (a) provides that a rental agreement "shall not provide that the tenant: (1) agrees to waive or forfeit rights or remedies under this chapter . . ." (of which § 47a-7 is of course a part). There is nothing in the record to indicate this lease agreement was not covered by these statutory provisions of § 47a-2 (a) and (b) (see explicit reference to §§ 47a-12 and 47a-7 in lease attached to defendants' motion for summary judgment).
The court should give to the construction of this lease provision an interpretation which renders it legal. The landlord should not be able to reduce or avoid statutory obligations of maintaining safety and cleanliness as to certain areas by using the word "building" in lieu of "premises" which is narrower in scope than the statutory term "premises".
The motion is also denied as to the second count.
Corradino, J.